EUGENE G. IREDALE: SBN 75292
JULIA YOO:  SBN 231163
GRACE JUN, SBN 287973
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525   FAX: (619) 233-3221

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF RUBEN NUNEZ by and through its successor-in-interest LYDIA NUNEZ, ALBERT NUNEZ, AND LYDIA NUNEZ<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO *et al.*,<br><br>Defendants. | CASE NO. 16-CV-1412-BEN (MDD)<br><br>**JOINT DISCOVERY MOTION** |
| COUNTY OF SAN DIEGO *et al.*,<br><br>Third Party Plaintiffs,<br><br>v.<br><br>CORRECTIONAL PHYSICIANS MEDICAL GROUP, INC., a California Corporation;  JORGE NARANJO, an individual; and SARA HANSEN, an individual ,<br><br>Third Party Defendants | |

Plaintiffs Estate of Ruben Nunez et al., by and through their attorney of record, Julia Yoo, and Defendants County of San Diego et al., by and through their attorney of record, Senior Deputy County Attorney Fernando Kish, hereby submit the following joint discovery motion.

## I.
## BASIS OF THE DISPUTE

Decedent Ruben Nunez was committed to Patton State Psychiatric Hospital ("Patton") because of his schizophrenia. While at Patton, Mr. Nunez was diagnosed with psychogenic polydipsia—a condition that can cause a person to drink water compulsively. On August 6, 2015, Patton transferred Mr. Nunez to San Diego County Central Jail ("SDCJ") for purposes of attending a court hearing on his competency. Plaintiffs allege that Patton's discharge records indicated that Mr. Nunez had a history of hyponatremia (water compulsion), which required water restriction. When Mr. Nunez entered SDCJ, doctors (psychiatrists) employed by Correctional Physicians Medical Group, Inc. ("CPMG") screened him but did not make any orders regarding his hyponatremia. Therefore, the County alleges that SDCJ staff were not aware of the need to restrict or monitor Mr. Nunez's water intake. Plaintiffs have alleged that San Diego Central Jail staff knew that Ruben suffered from hyponatremia, and yet they failed to provide any instructions or directions to jail staff to monitor or restrict Nunez's water intake.

On August 13, 2015, while at SDCJ, Mr. Nunez died of water intoxication. Mr. Nunez's parents filed this lawsuit alleging deliberate indifference on the part of medical and security staff who failed to provide adequate medical care and a *Monell* violation based on a lengthy history of preventable deaths of inmates at the SDCJ. The County defendants deny these allegations and filed a third-party complaint against CPMG and its doctors for breach of contract, indemnity and declaratory relief.

Plaintiffs propounded their request for production of document to the County of San Diego ("County") on November 18, 2016. On January 6, 2017,

pursuant to stipulated extensions, the County provided it responses. The County provided its privilege log to Plaintiffs on January 19, 2017. (Exhibit C). Among other things, Plaintiffs requested all documents related to all in-custody death investigations conducted by the Citizens' Law Enforcement Review Board (CLERB) from 2009 to August 2015, which would include the CLERB file for Mr. Nunez's death. The County objected to these requests as an impermissible infringement of irrelevant and confidential records. On February 21, 2017, Defendants provided a declaration by Chris Cross, an official of the San Diego Sheriff's Department attesting to the confidentiality of the requested materials. (Exhibit D).

### A. REQUESTED DOCUMENTS

Defendants have objected to the production of the following documents listed in Plaintiffs' Request for Production, Set One (Exhibit B):

**REQUEST FOR PRODUCTION NO. 9**: All documents in YOUR possession, custody or control related to the investigation conducted by Citizens' Law Enforcement Review Board (CLERB) of Ruben Nunez's death.

**RESPONSE TO REQUEST NO. 9**:

OBJECTION(S): This request seeks materials protected from disclosure in that they may contain information pertaining to remedial measures and disciplinary recommendations, are protected from disclosure by the deliberative process, self-critical analysis, required reports, and official information privileges, seek disclosure of privileged material subject to disclosure only under Cal. Penal Code § 832.7 and Evidence Code § 1043, and seek personnel, medical, and similar files in an unwarranted invasion of privacy under Penal Code section 832.8(f), Cal. Constitution, Article 1, section 1; 5 U.S.C. § 552a, and the Freedom of Information Act, Federal Privacy Act and U.S. Constitution, and work a deprivation of due process to the persons about whom such material may pertain. Defendant has no control over or access to documents maintained by Citizen's Law Enforcement

Review Board (CLERB). The requested documents may be available from CLERB pursuant to subpoena and are therefore equally available to plaintiff.

**REQUEST FOR PRODUCTION NO. 26**: Any and all DOCUMENTS, including all inter-departmental correspondence via chain of command, RELATING TO any personnel, official or employee of the DEPARTMENT DISAGREEING WITH INTERNAL AFFAIRS' SUSTAINED FINDINGS OF MISCONDUCT on the part of any DEPARTMENT jail employee from January 1, 2008 to September 2015.

**RESPONSE TO REQUEST NO. 26:**

OBJECTION(S): This request is overbroad and seeks information that is not relevant to any party's claims or defense nor proportional to the needs of this case. This request seeks documents which are protected by the Official Information Privilege and the individual right to privacy. This request seeks the production of protected information from peace officer files, in violation of state law, Penal Code sections 832.5, 832.7, and 832.8.

**REQUEST FOR PRODUCTION NO. 29**: All documents in YOUR possession, custody or control related to the investigation conducted by Citizens' Law Enforcement Review Board (CLERB) of any and all in-custody deaths from January 1, 2009 to August 2015.

**RESPONSE TO REQUEST NO. 29**:

OBJECTION(S). This request seeks materials protected from disclosure in that they may contain information pertaining to remedial measures and disciplinary recommendations, are protected from disclosure by the deliberative process, self-critical analysis, required reports, and official information privileges, seek disclosure of privileged material subject to disclosure only under Cal. Penal Code § 832.7 and Evidence Code § 1043, and seek personnel, medical, and similar files in an unwarranted invasion of privacy under Penal Code section 832.8(f), Cal.

Constitution, Article 1, section 1; 5 U.S.C. § 552a, and the Freedom of Information Act, Federal Privacy Act and U.S. Constitution, and work a deprivation of due process to the persons about whom such material may pertain. Without waiving objections, defendant identifies and produces documents in its possession, custody and control, Bates numbered CSD001064 – CSD001068[1]. Defendant has no control over or access to documents maintained by Citizen's Law Enforcement Review Board (CLERB). The requested documents may be available from CLERB pursuant to subpoena and are therefore equally available to plaintiff.

**REQUEST FOR PRODUCTION NO. 30**: Any and all DOCUMENTS RELATING TO any personnel or official of the COUNTY disagreeing with or rejecting CLERB'S findings of misconduct on the part of any DEPARTMENT jail employee from January 1, 2009 to August 2015.

**RESPONSE TO REQUEST NO. 30:**

Objection. This request seeks materials protected from disclosure in that they may contain information pertaining to remedial measures and disciplinary recommendations, are protected from disclosure by the deliberative process, self-critical analysis, required reports, and official information privileges, seek disclosure of privileged material subject to disclosure only under Cal. Penal Code § 832.7 and Evidence Code § 1043, and seek personnel, medical, and similar files in an unwarranted invasion of privacy under Penal Code section 832.8(f), Cal. Constitution, Article 1, section 1; 5 U.S.C. § 552a, and the Freedom of Information Act, Federal Privacy Act and U.S. Constitution, and work a deprivation of due process to the persons about whom such material may pertain. Without waiving objections, defendant identifies and produces documents in its possession, custody

---

[1] This entire sentence was included in error and should be stricken. The referenced bates numbered CSD001064 – CSD001068 do not correspond this request and are part of the CLERB files withheld from production.

and control, Bates numbered CSD001064 – CSD001068.[2]  Defendant has no control over or access to documents maintained by Citizen's Law Enforcement Review Board (CLERB).  The requested documents may be available from CLERB pursuant to subpoena and are therefore equally available to plaintiff.

**REQUEST FOR PRODUCTION NO. 31**:  Any and all DOCUMENTS RELATING TO any personnel or official of the COUNTY disagreeing with or rejecting CLERB'S recommendation for discipline of any DEPARTMENT jail employee from January 1, 2009 to August 2015.

**RESPONSE TO REQUEST NO. 31:**

Objection.  This request seeks materials protected from disclosure in that they may contain information pertaining to remedial measures and disciplinary recommendations, are protected from disclosure by the deliberative process, self-critical analysis, required reports, and official information privileges, seek disclosure of privileged material subject to disclosure only under Cal. Penal Code § 832.7 and Evidence Code § 1043, and seek personnel, medical, and similar files in an unwarranted invasion of privacy under Penal Code section 832.8(f), Cal. Constitution, Article 1, section 1; 5 U.S.C. § 552a, and the Freedom of Information Act, Federal Privacy Act and U.S. Constitution, and work a deprivation of due process to the persons about whom such material may pertain.  Without waiving objections, defendant identifies and produces documents in its possession, custody and control, Bates numbered CSD001064 – CSD001068.[3]  Defendant has no control over or access to documents maintained by Citizen's Law Enforcement Review Board (CLERB).  The requested documents may be available from

---

[2] This entire sentence was included in error and should be stricken.  The reference bates numbered CSD001064 – CSD001068 do not correspond this request and are part of the CLERB files withheld from production.
[3] This entire sentence was included in error and should be stricken.  The referenced bates numbered CSD001064 – CSD001068 do not correspond this request and are part of the CLERB files withheld from production.

CLERB pursuant to subpoena and are therefore equally available to plaintiff.

## B. NARROWING OF THE SCOPE OF THE REQUESTED DISCOVERY

After the in-person meet and confer on February 3, 2017, Plaintiffs limited the scope of these requests to the following:

> 1. As to the request related to County officials disagreeing with IA's sustained findings of misconduct, Plaintiffs have eliminated issues around officer discourtesy, rule violations not involving treatment of inmates, or use of force. This request is now limited to documents around dishonesty; failure to render aid; and failure to conduct proper cell checks; and

> 2. As to the CLERB reports, Plaintiffs are not requesting documents related to inmate on inmate violence or deaths from diseases. [4]

After the narrowing of the scope, Plaintiffs are seeking documents related to the County's refusal to sustain findings of misconduct or opposition to recommendations for discipline; CLERB documents related to Ruben Nunez's death; and CLERB investigations of in-custody deaths related to failure to render medical care.

## II.
## PLAINTIFFS' STATEMENT

### A. The Requested Information Is Relevant to the Litigation and Plaintiffs Would Be Substantially Harmed If the Materials Are Not Disclosed

Plaintiffs have alleged deliberate indifference to serious medical needs, wrongful death, failure to properly train, supervise, investigate and discipline and *Monell*. In addition to other requested discovery set forth above, Plaintiffs

---

[4] The requests do not include investigations of deaths from heart disease, liver disease, homicide resulting from inmate on inmate violence, cancer and complications from AIDS.

specifically seek CLERB files related to Mr. Nunez's death and CLERB and IA files regarding previous in-custody deaths at San Diego County jails related to denial of medical care. The information Plaintiffs require to prosecute their claims are contained in the CLERB files. The homicide investigation looked only to <u>what</u> caused Ruben's death, not who was responsible or negligent. The purpose of the homicide investigation was to determine whether a crime had been committed. Plaintiffs are entitled to discover which parties were responsible for failing to provide Mr. Nunez medical care. Internal Affairs failed to conduct an investigation despite evidence of the following: 1) that jail staff told Ruben Nunez to drink plenty of water after receiving notice of Ruben's hyponatremia; 2) that jail staff left Ruben to die after seeing him vomit; and 3) that jail nurses and doctors, who were aware that a nurse had told Ruben to **drink plenty water** despite the fact that Ruben was supposed to be placed under strict water restriction, took no action. Having failed to internally investigate the egregious misconduct of its employees, the County cannot prevent Plaintiffs from obtaining the only relevant materials relating to their claims that the County staff's failures led to Ruben's death that that it failed to properly supervise, investigate, and discipline its employees.

      Plaintiffs' theory of *Monell* liability is premised on the County's historic and systemic failures to properly investigate in-custody deaths of inmates at San Diego County jails, which, in turn, causes the County to fail to discipline problematic employees or more closely supervise such employees, which then culminates in an exceedingly high number of in-custody deaths. Yet, the County, through self-serving assertions, has taken the position in litigation that the evidence related to their failure to investigate in the present case is not relevant since that failure did not cause the decedent's death. It then takes the position that the prior failures to investigate in previous in-custody deaths is not relevant for *Monell* purposes because it has nothing to do with the present litigation. Herein lies the cyclical nature of a vicious pattern rooted in the absence of accountability: the County

continues to refuse to conduct proper investigations or discipline its staff, for which it is never held accountable; inmates in the County jail continue to die; Plaintiffs, like decedent Ruben Nunez and his parents, attempt to hold the County accountable through the assertion of a *Monell* claim for systemic failures to investigate and discipline County staff; the County refuses to produce discovery required to support Plaintiffs' *Monell* claim; when Plaintiffs move to compel the production of *Monell* discovery, the County then asserts that such discovery is "irrelevant" because the historic failures to investigate and failures to discipline could not have possibly contributed to Plaintiff Ruben Nunez's death.

Plaintiffs are already aware of the longstanding and systemic deficiencies in San Diego jails' treatment to inmates because of previous lawsuits filed against the San Diego Central jail and the reported 60 deaths in San Diego County jails in a span of five years, the highest rate in California. In three prior cases, *Victorianne v. San Diego*, *Estate of Daniel Sisson v. San Diego,* and *Sandoval v. San Diego,* there was evidence that the staff saw the decedents in medical distress and failed to render aid. The decedents were left in their cell to die despite obvious symptoms, including vomiting in Mr. Sisson's case. There was evidence that the staff ignored medical charts which contained critical information. There was evidence that the County failed to properly supervise and discipline its employees. These facts are strikingly similar to what happened to Mr. Nunez. In order to establish that the County maintained an unconstitutional *de facto* policy of failing to investigate such deaths and failing to supervise and discipline its employees, which then allowed County deputies and medical staff to deny medical care to inmates, Plaintiffs require the requested documents for evidence of prior constitutional violations.

In *Victorianne v. San Diego*, 14 CV 2170, Magistrate Judge Barbra Major ordered the County to produce all IA and CLERB materials related to Mr.

Victorianne's death.[5] (Exhibit E). In rejecting the County's arguments under privilege and relevance, Judge Major found that IA and CLERB documents related to Mr. Victorianne's death were necessary and relevant to Plaintiffs' claims of deliberate indifference. Plaintiffs do not have access to information regarding the dozens of other cases of medical neglect because they do not become publicly available unless a lawsuit has been filed.

### B. Defendants Cannot Meet the Heavy Burden of Showing Why Discovery Should Be Denied under Other Privileges or Objections

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). In actions brought under §1983, courts have repeatedly held that police personnel files and documents are relevant and discoverable.[6] "The use of a carefully drafted

---

[5] Three years before Mr. Nunez died, Mr. Victorianne died in the same jail. Mr. Victorianne was denied medical care and the correctional and the medical staff failed to take him to the hospital when Mr. Victorianne was in obvious medical distress. The claims in *Victorianne* were nearly identical to the claims Plaintiffs make in the present case as against the County and its officials.

In *the Estate of Daniel Sisson v. San Diego*, a jury found that the county and two nurses were deliberately indifferent to an inmate's health problems, resulting in his death in 2011. Jurors also found that the Defendants failed to properly monitor Mr. Sisson who was at risk for health complications.

In *Lopez*, 37-2014-00033347-CU-PO-CTL, Plaintiffs alleged that the jail staff left Mr. Lopez alone for 8 hours without medical help despite obvious symptoms of medical distress from overdose.

[6] See *Voth v. Albright*, 2006 WL 3001362, 6-8 (E.D. Cal. 2006); *Carter v. Carlsbad*, No. 10CV1072-IEG BLM, (S.D. Cal. Feb. 15, 2011) and *Newell v. Cnty. of San Diego*, No. 12CV1696-GPC BLM (S.D. Cal. Apr. 8, 2013).

protective order, under which only Plaintiff and his lawyer have access to the material, substantially reduces the confidentiality interests asserted by Defendants." *Soto v. City of Concord*, 162 F.R.D. 603, 614 (N.D. Cal. 1995). Given that the parties entered into a protective order in this case, which specifically governs CLERB materials, IA and other confidential or sensitive information, Plaintiffs should be entitled to the production of these relevant and critical documents. [Docket No. 36, ¶1]. Plaintiffs have already substantially narrowed the scope of their requests.

Defendants must make a substantial threshold showing in order to invoke the official information privilege. *Soto*, 162 F.R.D. at 613; *Hampton v. City of San Diego*, 147 F.R.D. 277, 231 (S.D. Cal. 1993). To meet this showing, Defendants "must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." *Soto*, 162 F.R.D. at 613. The court in *Hampton*, 147 FRD at 230-31, set forth in detail the procedural requirements for invoking the official information privilege. The asserting party must sufficiently **identify the documents** in a privilege log so as to afford the requesting party an opportunity to challenge the assertion. *Id*. Here, the privilege log lacks any detail as to what documents are in dispute.

The party claiming the privilege "must also submit, **at the time** it files and serves its response to the discovery request, a declaration or affidavit, under oath and penalty of perjury, from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration." *Id.* The declaration from Sgt. Cross was provided to Plaintiffs on February 21, 2017, nearly three months after the original date the answers were due, and it is clear that he lacks personal knowledge regarding the specific documents.

"The affidavit must include:
> (1) an affirmation that the agency generated or collected the material in issue and has maintained its

> confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

*Soto*, 162 F.R.D. at 613. Defendant County of San Diego has failed to make the threshold showing through a declaration from a responsible official. Sgt. Cross does not declare that he reviewed any materials and he fails to identify any privacy interests that may be threatened or what harm may be done if disclosures were made. The only basis in the declaration is that "indiscriminate disclosure" may discourage people from providing information and disrupt the operations of the Department.

*Kelly* dispatches a frequently invoked argument against disclosure of "deliberative process" materials, such as evaluative comments and opinions. *See Id*. at 664. In rejecting the argument that revealing such information will affect the candor of the officers and thus, have a "chilling effect" on police efforts, *Kelly* holds that there is no empirical evidence to support the contention that disclosing the type of information that Plaintiffs seek will make officers who participate in the internal investigations less honest. In fact, the opposite proves true. *Kelly* at 665.

The documents Plaintiffs seek are critical to their case. Because there was no Internal Affairs investigation, Plaintiffs must rely on the CLERB Report of Ruben's death. Ruben Nunez cannot testify about officers' conduct toward him prior to his death on August 13, 2015. Plaintiffs cannot maintain their *Monell* claims without the prior IA and CLERB files in substantially similar cases. Plaintiffs are entitled to the discovery they are requesting

///

## III.

## DEFENDANTS' STATEMENT

In response to Plaintiffs' document request, the County has already produced approximately 1,500 pages and more than 50 media files (consisting of audio recording and video files). This production includes all of the County's requested medical records for Mr. Nunez, numerous photographs, all pertinent video footage, the entire Homicide Investigation file related to Nunez's death, employee rosters for the relevant dates, and the requested policies and procedures for nurse and law enforcement jail staff. In short, all the documents requested by Plaintiffs related to Mr. Nunez in the County's possession has already been produced.[7] Despite the comprehensive production to date, Plaintiffs persist in seeking an additional 2000 plus pages of primarily CLERB files that contain confidential information and have absolutely no bearing on any issue in this case. For the reasons set forth below, the County respectfully requests the Court deny Plaintiffs' request in its entirety. In the alternative, if the Court is inclined to compel further production, the County request that such production, just like the order in *Victorianne* (Exhibit E), be limited to the CLERB file for Mr. Nunez.

### A. The Confidentiality of the CLERB and Internal Affairs Documents Cannot Be Disputed.

CLERB is an independent investigating body separate from the Sheriff's Department. *See* Co. San Diego Admin. Code §§ 340, 340.3(c). The CLERB records are kept confidential and not disclosed to the public. *See* Co. San Diego Admin. Code § 340.14; *see also* Sgt. Cross Decl., ¶ 3. Moreover, Internal Affairs and CLERB records are designated as confidential under California Penal Code sections 832.7 and 832.8. Penal Code section 832.7 provides that the records "shall not be disclosed in any criminal or civil proceeding except by discovery

---

[7] The only exception is the the CLERB file for Mr. Nunez, which consists of six pages and identified in the privilege log as Bates Numbers CSD002783-2788.

pursuant to Sections 1043 and 1046 of the Evidence Code," disclosure of the subject records may only occur under court order.

Federal common law also recognizes the official information privilege. *Kerr v. U.S. Dist. Ct. for the Northern Dist.*, 511 F.2d 192, 198 (9th Cir. 1975). As acknowledged by the Plaintiffs, the level of protection afforded by the privilege is determined on a case by case basis balancing the interests of the party seeking discovery against the interests of the governmental entity asserting the privilege. *Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal. 1987); *Miller v. Pancucci*, 141 F.R.D. 291, 300 (C.D. Cal. 1992); *Hampton v. City of San Diego*, 147 F.R.D. 227, 230-231 (S.D.Cal. 1993).

**B.     The CLERB and Internal Affairs Files Are Not Relevant To Any Issue In This Case.**

Plaintiffs contend the CLERB and Internal Affairs documents related to all jail deaths since 2009 are relevant to Plaintiffs' *Monell* cause of action. This argument is without merit because Plaintiffs have yet to state a valid *Monell* claim and none of the prior in-custody deaths involve circumstances even remotely similar to the unique facts in this case.

A municipality can be sued directly under section 1983 *only* where the alleged unconstitutional conduct is the result of an <u>official, formal policy</u> (*Monell* model) *or* as a result of a <u>pervasive practice</u> (*Canton* model). *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989); *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Under a *Monell* modeled case, the formal policy instructs the entity's employee to take the unconstitutional action, and thus directly inflicts the injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978*).* In *Canton*-type cases, a plaintiff must plead and prove a pattern of constitutional violations *(i.e.*, multiple instances of harm) from which it can be plausibly shown that the challenged practice or custom was the moving force of the constitutional violation, and municipal

decision makers were on notice. *Board of Comm'rs of Bryan Cty.*, 520 U.S. at 407-08. Liability for improper custom may not be predicated on isolated or sporadic incidents. *Trevino,* 99 F.3d at 918; *See also Connick,* 563 U.S. at 63 (a pattern of similar constitutional violations is required to establish municipal liability for a deliberately indifferent custom or program).

Here, Plaintiffs' has not identified any specific County policy that expressly directed its employees to violate Nunez's constitutional rights. The documents sought have no bearing on what policy is allegedly at issue in this case and what the employees in this case allegedly did in response any purported County policy. In other words, proof of prior conduct is not relevant to a *Monell* modeled case.

As to the *Canton*-type cases, Plaintiffs have failed to articulate any pattern of **similar** constitutional violations. Plaintiffs certainly cannot point to any prior in-custody death involving water intoxication. Plaintiffs' complaint cites to newspaper article discussing the number of recent inmate deaths. However, none of those deaths involved water intoxication or any reference to any practice implicated in this case. Plaintiffs also argue that the the circumstances in *Victorianne* and *Sisson* are similar. However, the cause of death in *Sisson* was chronic asthma complicated by heroin withdrawals. *Victorianne* involved death due to a balloon of methamphetamine swallowed by the decedent. Neither involved a rare psychiatric condition. Unlike *Victorianne* and *Sisson,* the only indication of any medical distress exhibited by Mr. Nunez was a single instance of vomiting approximately 30 to 45 minutes before his death, which could have been indicative of nothing more than an upset stomach. The fact is Mr. Nunez was a very unique inmate with a very peculiar affliction.

Moreover, Plaintiffs' claims seek to constitutionalize medical practice standards, an agenda inconsistent with existing case law precedent. *See e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990),

and *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 525 (9th Cir. 1999) [unequivocally establishing that allegations of inadvertent failures to provide medical care, malpractice, gross negligence, and even failing to take a medical history and failing to diagnose an medical condition will not suffice to support a federal civil rights claim for deliberate indifference to a serious medical need.]

Plaintiffs also contend that they are entitled to discover which parties are responsible for allegedly failing to provide Mr. Nunez's medical care. This is not disputed. However, that information is not found in confidential files of in-custody deaths of other people. Instead, discovery completed to-date, including the production of the detailed Homicide Investigation file and the employee rosters, discloses every person Mr. Nunez came into contact with during his stay at SDCJ. In other words, the information Plaintiffs are purportedly seeking through this motion is already in their possession.

As to be expected, the in-custody deaths for the past six and half years are as varied as found in society at-large, which include drug overdose, suicide, heart disease, liver disease, homicide, Cancer, and complications from AIDS. Many of these death occurred at facilities other than SDCJ. Unsurprisingly given the rarity of Mr. Nunez's affliction, there is no other water intoxication deaths during the requested time period. Plaintiffs are willing to narrow the scope to exclude any in-custody deaths caused by disease or inmate on inmate violence (homicide); however, that still leaves suicides and drug overdose, which make up more than a third of the in-custody deaths during the requested time period. However, Nunez did not die of suicide or a drug overdose. Any protocols used in context of suicide or drug addiction are of no consequence to a person afflicted with psychogenic polydipsia. Thus, even if Plaintiffs were able to glean any purported pattern of constitutionally unpermitted conduct from the requested files, the conduct would be irrelevant to any issue in this case because the uniqueness of Mr. Nunez's

condition. His rare affliction and manner of death makes all prior in-custody deaths dissimilar and incapable of establishing a *Canton*-type case.

### C. Plaintiff's Use of *Victorianne* Material In This Case Demonstrates That Compelled Disclosure May Still Prejudice Defendant Even With A Protective Order In Place.

Plaintiffs allege that their counsel reviewed hundreds of pages of IA and CLERB materials as part of their involvement in the *Victorianne* case. By Plaintiffs' own admission, those documents were ordered produced pursuant to a stipulated protective order, which required her to use those documents "solely in connection" with that litigation and "not for any other purpose including but not limited to any other litigation." At the conclusion of the litigation, the protective order also required Plaintiffs' attorney to "destroy[] all summaries, annotations, and compilations of information contained in the documents, and all other material derived therefrom . . . ."

Although the County appreciates that Plaintiffs' counsel destroyed all the physical copies of the confidential records produced in *Victorianne*, her arguments in this motion make clear that a compilation of information gleaned from those documents remains in her memory. The County points this out not to suggest any improper conduct on the part of the Plaintiffs' counsel; rather, this issue demonstrates the imperfection of the protective order. No matter how comprehensive, a protective order is simply incapable of erasing confidential information from the mind of Plaintiffs' counsel. For that reason, the protective order is insufficient to fully prevent prejudicial use of the confidential information in subsequent litigation.

By contrast, Plaintiffs will suffer no prejudice by denying disclosure. First, the information is not relevant to any issue in this case. Second, information related to in-custody deaths is at least partially available from publicly available sources to the extent Plaintiffs has already obtained that information from different

sources.  In addition, Plaintiffs counsel can inquire about such information during depositions at which point a follow up document request may be warranted if deposition evidence reveals any alleged pattern of constitutional violations.

Dated:  February 24, 2017

Respectfully submitted,
IREDALE and YOO, APC

*s/ Julia Yoo*
JULIA YOO
Attorneys for Plaintiffs
E-mail:  jyoo@iredalelaw.com

Dated:  February 24, 2017

THOMAS E. MONTGOMERY, County Counsel

*s/ Fernando Kish*
FERNANDO KISH, Senior Deputy
Attorneys for Defendants/Third Party Plaintiffs
County of San Diego, William Gore, Alfred Joshua and Bruce Leicht
E-mail: fernando.kish@sdcounty.ca.gov

## CERTIFICATION

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the contents of this document are acceptable to Fernando Kish, counsel for Defendant County of San Diego, and that I have obtained his authorization to affix his electronic signature to this document.

Dated:  February 24, 2017          IREDALE and YOO, APC

By: *s/ Julia Yoo*
JULIA YOO
Attorney for Plaintiffs