1  EUGENE G. IREDALE: SBN 75292
2  JULIA YOO:  SBN 231163
   GRACE JUN, SBN 287973
3  IREDALE & YOO, APC
   105 West F Street, Fourth Floor
4  San Diego, CA 92101-6036
   TEL: (619) 233-1525   FAX: (619) 233-3221
5
6
   Attorneys for Plaintiffs
7
8          **UNITED STATES DISTRICT COURT**
           **SOUTHERN DISTRICT OF CALIFORNIA**
9

10  THE ESTATE OF RUBEN NUNEZ      )  CASE NO. 16-CV-1412-BEN (MDD)
    by and through its successor-in-  )
11  interest LYDIA NUNEZ, ALBERT   )
    NUNEZ, AND LYDIA NUNEZ         )
12                                 )  **JOINT MOTION FOR**
                                   )  **DETERMINATION OF DISCOVERY**
13         Plaintiffs,             )  **DISPUTE REGARDING NUMBER OF**
                                   )  **DEPOSITIONS**
14                                 )  **[FED. R. CIV. P. 30]**
15  v.                             )
                                   )
16  COUNTY OF SAN DIEGO *et al*.,  )
                                   )
17                                 )
           Defendants.             )
18                                 )
19  COUNTY OF SAN DIEGO *et al*.,  )
                                   )
20                                 )
           Third Party Plaintiffs, )
21                                 )
    v.                             )
22                                 )
23  CORRECTIONAL PHYSICIANS        )
    MEDICAL GROUP, INC., a         )
24  California Corporation;  JORGE )
    NARANJO, an individual; and    )
25  SARA HANSEN, an individual ,   )
                                   )
26                                 )
27         Third Party Defendants  )

28

Plaintiffs Estate of Ruben Nunez et al., by and through their attorney of record, Iredale and Yoo, Defendants County of San Diego *et al.*, by and through their attorney of record, Fernando Kish, Defendants Patton State Hospital *et al.*, by and through their attorney of record, Daniel Eskue, Defendants Correctional Physicians Medical Group ("CPMG") and Jorge Naranjo, by and through their attorney of record, Jennifer Scher, and Defendant Sara Hansen, by and through her attorney of record, Sam Crockett, hereby submit the following joint motion for resolution of the parties' discovery dispute.

## I.
## BASIS OF THE DISPUTE

Pursuant to Fed. R. Civ. P. 30 (a)(2), Plaintiffs seek leave of court to take twenty-five depositions in this case, in addition to expert witnesses. As the parties have not yet designated expert witnesses, Plaintiffs do not know how many expert witness depositions they will need to take, if any. Plaintiffs do not seek to take 25-days worth of depositions at 7 hours for each deponent. They seek to work efficiently to minimize inconvenience to counsel and deponents; Plaintiffs wish to depose 2-3 witnesses per day, and anticipate taking 2-3 hours to depose the witnesses, including defendants and percipient witnesses.

Defendants County of San Diego et al. (hereinafter "County Defendants") and Patton State Hospital et al. (hereinafter "Patton Defendants") oppose Plaintiffs' request. Third-Party Defendants CPMG, Dr. Jorge Naranjo, and Dr. Sara Hansen have set forth their respective positions in sections V and VI below.

### A. **Plaintiffs' Request for Telephonic Status Conference**

On Monday, May 1, 2017, the parties conducted a conference call with all counsel to meet and confer regarding the number of depositions Plaintiffs were seeking to take. The parties were unable to come to a stipulation, thereby necessitating the filing of a joint motion for determination of the instant discovery dispute. On Tuesday, May 2, 2017, Plaintiffs' counsel provided Plaintiffs' draft of the motion, including Plaintiffs' portion and counsel's declaration, to all counsel.

On Wednesday, May 3, 2017, Fernando Kish, counsel for County of San Diego, informed Plaintiffs' counsel that a family emergency required him to travel out of the country on Thursday, May 4. Prior to departing, Mr. Kish graciously provided his portion to the joint motion and his declaration, which Plaintiffs' counsel received on Thursday, May 4. Mr. Kish, however, was not present to review the final joint motion including revisions made by Plaintiffs' counsel. To avoid any prejudice to Mr. Kish, and to ensure all counsel a fair opportunity to respond and provide his/her respective position, Plaintiffs respectfully request the setting of a telephonic status conference with the Court to discuss the number of depositions Plaintiffs may take. Plaintiffs respectfully request the setting of the telephonic status conference to May 11 and May 12, so all counsel have an opportunity to participate and be present.

This request is made solely on behalf of Plaintiffs.

**B. Factual Background**

Decedent Ruben Nunez, who suffered from schizophrenia for most of his adult life, was committed to Patton State Psychiatric Hospital ("Patton") because he was declared incompetent to stand trial. While at Patton, Mr. Nunez was diagnosed with psychogenic polydipsia—a condition that can cause a person to drink water compulsively to the point of death (also called "water intoxication"). While at Patton, Ruben's access to water was strictly limited. On August 6, 2015, Patton transferred Mr. Nunez to San Diego County Central Jail ("Central Jail") for purposes of attending a court hearing on his competency. Plaintiffs' allege the Central Jail staff did not limit or restrict Ruben's access to water. On August 13, 2015, while at Central Jail, Mr. Nunez died of water intoxication.

**C. Procedural Background**

Plaintiffs filed their original complaint on June 8, 2016. (DOC 1.) In that complaint, plaintiffs named six individual defendants (William Gore, Bruce Leicht, Alfred Joshua, Harry Oreol, Kayla Fisher, and Marcy Moon) plus the County of

San Diego. (DOC 1). On August 18, 2016, plaintiffs filed a motion seeking leave to amend their complaint to add the State of California, Patton State Hospital and two more individual defendants (Theresa Baroi and Wilda Ramos). (DOC 10 & 10-1.) This Court granted that motion on August 29, 2016 (DOC 14) and plaintiffs filed their amended complaint on August 30, 2016, which included a total of eight individual defendants and two entity defendants. (DOC 15). On September 15, 2016, as part of their Rule 26 obligations, the then counsel for County Defendants, Carra Rhamy, and counsel for Plaintiffs, Julia Yoo, met and conferred and discussed the anticipated discovery in this case, including any proposed changes to the default discovery limitations. After this discussion and in accordance with this Court's Chambers Rules/Civil Pretrial Procedures rule II(A)(1), the County Defendants and Plaintiffs submitted their Joint Discovery Plan, wherein the County Defendants and Plaintiffs expressly agreed that "Discovery should be conducted in accordance with the limitations imposed by the discovery rules of the Federal Rules of Civil Procedure." On October 31, 2016, County Defendants filed their motion for leave to file a third-party complaint. (Doc. 29). Patton Defendants filed their motion to dismiss Plaintiffs' First Amended Complaint on December 6, 2016. (Doc. 41). This court's original Scheduling Order (Doc. 25) made no provision to increase the number of depositions. The original Scheduling Order was then modified at the mutual request of all parties on February 7, 2017 (Doc. 56) and again on April 24, 2017 (Doc. 95) without any provision to increase the number of depositions. At the specific invitation of all counsel, the Court has held various teleconferences with counsel to discuss discovery issues on February 27, 2017 (Doc. 70), March 13, 2017 (Doc. 76), March 20, 2017 (Doc. 79) and April 6, 2017 (Doc. 91). Prior to the March 20, 2017, status conference, Plaintiffs had noticed and confirmed the depositions of twelve (12) deponents. (Decl. Grace Jun, doc. 84-1, at ¶¶ 2). Defendants did not raise any objection about 12 depositions at

that time. Altering the parties' agreement to abide by the statutory limit of 10 depositions was not raised at any of these conferences.

Currently pending before the Court is Patton Defendants' motion to dismiss Plaintiffs' First Amended Complaint (FAC) (doc. 41) and Plaintiffs' motion for reconsideration regarding the Court's denial of Plaintiffs' *ex parte* motion for leave to file a Second Amended Complaint (doc. 78).

Plaintiffs' proposed Second Amended Complaint (doc. 58-1) seeks to name the following defendants: Rogel Tingzon, a nurse at Central Jail who advised Ruben to "drink plenty of water"; Bienvenido Samonte, a nurse at Central Jail who had contact with Ruben Nunez before his death; Paul Bell, a correctional officer at Central Jail who had contact with Ruben Nunez before his death; CPMG; Dr. Naranjo; and Dr. Hansen. Should the Court ultimately deny Plaintiffs' leave to file a Second Amended Complaint, Plaintiffs will be required to file a separate § 1983 action against the individual defendants before the expiration of the statute of limitations in August 2017.

### D. <u>Plaintiffs' Allegations</u>

Mr. Nunez's parents filed this lawsuit alleging deliberate indifference on the part of County Defendants, County jail staff, and Patton Defendants who failed to provide adequate medical care. Plaintiffs have further alleged the following causes of action against County supervisory Defendants and Patton supervisory Defendants: failure to train; failure to supervise and discipline; and failure to properly investigate (as to County supervisorial Defendants only). Plaintiffs have alleged a *Monell* cause of action against the County based on a lengthy history of preventable deaths of inmates at the Central Jail. They have alleged ADA and Rehabilitation Act claims against the two entity Defendants, County of San Diego and Patton State Hospital.

Plaintiffs allege that Patton's discharge records indicated that Mr. Nunez had a history of hyponatremia (water compulsion), also referred to as water

intoxication, which required water restriction.  Plaintiffs further allege Patton's discharge instructions failed to convey sufficient instructions for treatment of water intoxication, failed to convey the seriousness of Ruben's medical condition, and that Patton officials failed to take adequate steps to ensure that the discharge instructions were provided to Central Jail medical staff.  When Mr. Nunez entered Central Jail, Dr. Naranjo and Dr. Hansen (both psychiatrists employed by CPMG), screened Ruben but did not make any orders regarding his hyponatremia. Plaintiffs allege San Diego Central Jail staff knew that Ruben suffered from hyponatremia, and yet they failed to provide any instructions or directions to jail staff to monitor or restrict Nunez's water intake.

**D. Plaintiffs' Requested Depositions**

Prior to the instant discovery dispute, the following depositions had been scheduled:

| | Deponent | Description | Date and Time |
|---|---|---|---|
| 1. | Kayla Fisher | Defendant, Patton State Hospital administrator | May 9, 2017 at 9:00 AM |
| 2. | Marcy Moon | Defendant, Patton State Hospital administrator | May 9, 2017 at 11:00 AM |
| 3. | Harry Oreol | Defendant, Patton State Hospital administrator | May 9, 2017 at 2:00 PM |
| 4. | Theresa Baroi | Defendant, Patton State Hospital nurse | May 10, 2017 at 9:00 AM |
| 5. | Wilda Ramos | Defendant, Patton State Hospital nurse | May 10, 2017 at 1:30 PM |
| 6. | Paul Bell | County jail deputy / percipient witness / defendant in Plaintiffs' proposed SAC | May 15, 2017 at 9:00 AM |
| 7. | Alfred Joshua | Defendant, director of medical services at County jail | May 16, 2017 at 9:00 AM |
| 8. | Lisa Brannan | Sheriff's Department homicide detective | May 16, 2017 at 1:00 PM |

| | Deponent | Description | Date and Time |
|---|---|---|---|
| 9. | Bienvenido Samonte | County jail nurse / percipient witness / defendant in Plaintiffs' proposed SAC | May 17, 2017 at 9:00 AM |
| 10. | Rogel Tingzon | County jail nurse / percipient witness / defendant in Plaintiffs' proposed SAC | May 17, 2017 at 1:00 PM |
| 11. | Jeffrey Carr | County jail deputy / percipient witness | May 18, 2017 at 9:00 AM |
| 12. | Cloribel DeSilva | County jail nurse who performed intake of Ruben/percipient witness | May 18, 2017 at 1:00 PM |

The parties have confirmed that the five depositions of Patton deponents will go forward on May 9 and May 10. The County position is that, pursuant to Fed. R. Civ. P. 30, plaintiffs are required to either obtain leave of court or a stipulation from the parties to take more than ten depositions. Since plaintiffs have done neither, they will be left with only five depositions remaining after taking the five depositions of the Patton deponents on May 9 and May 10. The County remains willing to stipulate that plaintiffs may take up to 12 depositions plus experts.

Plaintiffs further seek to take the following depositions, which have not been scheduled or confirmed:

**13. San Diego County Person Most Knowledgeable ("PMK") pursuant to Fed. R. Civ. P. 30(b)(6) re: Internal Affairs Investigations.**

    a.    Plaintiffs seek to depose the person most knowledgeable about the initiation, conduct, and conclusion of Internal Affairs investigations at the Sheriff's Department, including: who reviews the findings and conclusions of an IA investigation; what actions, if any, are taken at the conclusion of the IA investigation; and how IA investigations are stored, maintained, and how such information can be subsequently accessed.

    b.    Plaintiffs contend this deposition is relevant to the following causes of action (COA) in Plaintiffs' operative FAC: 6th COA failure to properly supervise and discipline; 7th COA failure to

investigate; and 8th COA Monell claim for a widespread pattern and practice of discrediting complaints of staff misconduct or failures and failing to investigate, supervise, discipline, and train County jail medical and correctional staff, leading to a high number of deaths.

**14.     San Diego County PMK re: CLERB**

a.     Plaintiffs seek to depose the person most knowledgeable about the relationship between the San Diego County Sheriff's Department and the Citizens Law Enforcement Review Board (CLERB), including: how and when CLERB is notified of an in-custody death at County jails; what information is given to CLERB regarding such deaths; and how information provided to CLERB is stored, maintained, and access in any Sheriff's Department information system.

b.     Plaintiffs contend this deposition is relevant to the following causes of action (COA) in Plaintiffs' operative FAC: 7th COA failure to investigate; and 8th COA *Monell* claim for a widespread pattern and practice of failing to investigate, supervise, discipline, and train County jail medical and correctional staff, leading to a high number of deaths.

**15. Patton State Hospital PMK re: treatment and monitoring of psychogenic polydipsia and related policies and procedures.**

a.     Plaintiffs seek to depose the person most knowledgeable at Patton State Hospital regarding Patton's treatment and monitoring of patients suffering from psychogenic polydipsia / water intoxication, including discharge/transfer of such patients to other facilities.

b.     Plaintiffs contend this deposition is relevant to the following causes of action (COA) in Plaintiffs' operative FAC: 5th COA for failure to properly train; 6th COA for failure to properly supervise and discipline; and ADA and Rehabilitation Act claims.

**16.  Dr. Edwin Peng - Psychiatrist at Patton State Hospital who treated Ruben Nunez for psychogenic polydipsia.**

      a.  Plaintiffs contend this deposition is relevant to Plaintiffs' 10th COA for negligence against Patton Defendants and ADA and Rehabilitation Act claims.

**17.  Dr. Jorge Naranjo** – psychiatrist who Plaintiffs contend reviewed and approved Ruben's medical chart from Patton on August 6, 2015. Plaintiffs contend that, although he was aware of Ruben's serious medical condition and the need to restrict Ruben's access to water, he provided no instructions regarding Ruben's medical care.

**18.  Dr. Sara Hansen** – psychiatrist who evaluated Ruben on August 9, 2015. She noted Ruben suffered from "hyponatremia require water restriction."  Plaintiffs contend that Dr. Hansen had access to nurse Tingzon's note, which advised Ruben to "drink plenty of water," but took no further action.

**19.  Bruce Leicht** – Defendant Leicht is the former medical services director at County jails.  Plaintiffs believe that the deposition of Dr. Alfred Joshua, the current County jail medical services director, will be sufficient, but reserve the right to take Mr. Leicht's deposition if Dr. Joshua is unable to speak to past institutional practices.

**20 – 25  RESERVED.**  Plaintiffs wish to reserve the right to depose additional witnesses depending on the information elicited during the depositions of the above-referenced witnesses, particularly information that may be provided by the PMKs or supervisory defendants regarding institutional policies, practices, and procedures; and to take depositions of Defendants' experts.

///

///

///

## II.
## PLAINTIFFS' STATEMENT

Federal Rules of Civil Procedure 30(a)(2)(A)(i) requires a party to obtain leave of court if party intends to take more than 10 depositions in a case. A court "must grant leave to the extent consistent with Rule 26(b)(1) and (2) . . ." *Id*. Fed. R. Civ. P. 26(b)(1) discusses the scope of discovery and allows discovery on any matter "relevant to any party's claim or defense and proportional to the needs of the case" including consideration of such factors as "the importance of the issues at stake in the action . . . the parties' relative access to relevant information . . . [and] the importance of the discovery in resolving the issues . . ." Fed. R. Civ. P. 26(b)(1).

In order to overcome summary judgment on Plaintiffs § 1983 causes of action, Plaintiffs will need to show "deliberate indifference" by Defendants, which requires inquiry into the personal knowledge and awareness of each individual. Plaintiffs likewise need to show "deliberate indifference" to sustain their ADA and Rehabilitation Act causes of action. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). "To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." *Id*. Intentional discrimination can be shown by demonstrating defendants acted with "deliberate indifference." *Id*. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id*. at 1139.

Here, Plaintiffs' ADA and Rehabilitation Act claims are premised in part on failures to train and/or supervise both San Diego County and Patton State Hospital staff. As against the County, the failure to train or supervise claim centers on issues of treatment of psychogenic polydipsia and hyponatremia. As to Patton, the failure to train and supervise claim relates to the sufficiency of discharge instructions when Ruben was transferred out of Patton. *See* FAC at ¶¶ 218 – 219. Plaintiffs' ADA and Rehabilitation Act claims of "failure to train" are analyzed

under the same standard applicable to 42 U.S.C. § 1983 "failure to train" claims. *Green v. Tri-Cty. Metro. Transp. Dist.*, 909 F. Supp. 2d 1211, 1220 (D. Or. 2012). In addition, Plaintiffs have pled § 1983 causes of action for failure to train and failure to supervise and discipline claims against Patton and County supervisory defendants and failure to investigate claims against County supervisory defendants.

In order to prevail on a "failure to train" claim against a supervisory defendant, the supervisory defendant's failure to train must amount to deliberate indifference. *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998). *See also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (a "plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates."). Plaintiffs must show that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers …can reasonably be said to have been deliberately indifferent to the need." *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002), *citing Canton v. Harris*, 489 U.S. 378, 389 (1989). Where plaintiffs submit evidence of prior incidences of harm to inmates, a "factfinder may find that the policymakers and supervisors were 'on actual or constructive notice of the need to train.'" *Id.*, *citing Farmer v. Brennan*, 511 U.S. 825, 841 (1994).

Thus, whether the analysis occurs under Plaintiffs' § 1983 claims for failure to train and supervise; *Monell* cause of action; or ADA and Rehabilitation Act causes of action, Plaintiffs will need to take discovery on the knowledge and awareness of each supervisory and individual defendant to satisfy the "deliberate indifference" standard. Did supervisory defendants have "actual or constructive notice" of the need to train their staff on treatment and monitoring of Ruben Nunez's medical condition? Did individual County medical and correction staff members know of Ruben's serious medical condition and the need to restrict his

water intake?  County jail medical records clearly state Ruben Nunez suffered from hyponatremia and should have restricted access to water – were staff members aware of these notations in their own medical records?  Patton State Hospital records demonstrate Patton had an elaborate "water intoxication protocol" in place for Ruben Nunez.  Although the discharge instructions repeatedly reference the protocol, Patton employees failed to transmit the protocol to County Jail.  Were Patton staff members and officials aware of the danger of failing to transmit that protocol?  It would be manifestly unfair to deny Plaintiffs the opportunity to take depositions to establish actual or constructive notice/knowledge of each relevant individual then move for summary judgment by claiming that Plaintiffs cannot show "deliberate indifference" because they have failed to establish evidence of each official's knowledge or awareness of a likelihood of a violation of a federal right.

Both *de facto* and *de jure* policies can establish deliberate indifference, even where the supervisory defendant does not have personal contact with the plaintiff. *See e.g. Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) ("Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.")(internal citations omitted); *Colwell v. Bannister*, 763 F.3d 1060, 1069-70 (9th Cir. 2014) (medical director's decision to deny cataract surgery due to de facto "one eye only" policy was not a difference of medical opinion, but amounted to deliberate indifference pursuant to de facto policy).

Thus, Plaintiffs seek to depose the PMK witnesses at the County and Patton for purposes of determining the existence of de facto (or de jure) policies, which may have contributed to the deprivation of Ruben Nunez's Constitutional and other federally protected rights.  With respect to the Internal Affairs and CLERB PMKs, whom Plaintiffs seek to depose, both are relevant to Plaintiffs' failure to properly

supervise and discipline cause of action; failure to investigate cause of action; and *Monell* claim. *See* FAC ¶¶ 139 – 144; 150-155; and 172-173. Plaintiffs are taking the depositions of the PMK witnesses for the County as an accommodation to counsel for the County, who requested Plaintiffs depose other individuals with knowledge prior to deposing Sheriff Gore.

With respect to the Patton State Hospital PMK, Plaintiffs seek to inquire about policies, practices, and procedures in place regarding treatment, care, monitoring and discharge of patients who suffer from psychogenic polydipsia / water intoxication. The nursing discharge summary provided to Plaintiffs in discovery, generated by Patton staff, shows reference to "water intoxication" or "water intox" and remaining within "protocol" limits. The monthly psychiatric progress note provided to the County with the discharge summary states "Mr. Nunez remains on a Water Intox Protocol . . ." Yet, no water intoxication "protocol" for Ruben was transmitted to the County. Patton has a preprinted form labeled PSH 7485 that is titled, "WATER INTOXICATION PROTOCOL" at the top of the form. On July 27, 2015, using form PSH 7485, Dr. Aung Zin had ordered Ruben to be placed on the Water Intoxication Protocol for 28 days (Ruben was transferred to San Diego Central Jail on August 6, 2015). It is unclear to Plaintiffs why a doctor's order regarding water intoxication protocol, in effect at the time of Ruben's discharge to Central Jail, would not be transmitted to Central Jail. Compounding Plaintiffs' confusion is the existence of a "Nursing Discharge Summary Checklist" form, which Plaintiffs believe is used at Patton (form PSH 7246) by nursing supervisors to audit discharge documents. This document, specifically, in bold, indicates that copies of the water intoxication protocols (PSH 7485) should be included with discharge instructions. This is why Plaintiffs seek to depose a PMK on the issue of discharge instructions related to psychogenic polydipsia / water intoxication.

Because Plaintiffs must inquire into the knowledge and awareness of medical, correctional, and supervisorial staff members at Patton State Hospital and County Central Jail, including inquiry into issues of prior notice, whether actual or constructive, in order to overcome summary judgment on their § 1983 claims and ADA and Rehabilitation Act claims, their request for up to 25 depositions, touch upon three factors set forth in Rule 26(b)(1): (1) the importance of the issues at stake in the action; (2) the Plaintiffs' relative access to relevant information; and (3) the importance of the discovery in resolving the issues. For example, County Defendants have taken the position that Central Jail medical and correctional staff were unaware of the need to restrict Ruben's access to water because neither Dr. Naranjo nor Dr. Hansen provided such instruction or direction. *See* County's Third Party Complaint at ¶¶ 17-18 (doc. 43). The County Defendants make this contention even though jail staff had access to Ruben's medical records, which showed he suffered from hyponatremia that mandated restricted access to water. FAC ¶¶48, 50, 87-90. Without deposing County medical and correctional staff (*e.g.* nurses Tingzon, Samonte and DeSilva; and correctional deputies Bell and Carr), Plaintiffs have no way of ascertaining the knowledge and awareness of the jail staff.

Finally, Plaintiffs' ADA and Rehabilitation Act claims require Plaintiffs to show that entity defendants, County of San Diego and Patton State Hospital, failed to make reasonable accommodations to Ruben Nunez on the basis of his disability (psychogenic polydipsia). Because Plaintiffs must establish institutional conduct, evidenced through the actions of multiple individuals over a span of time, Plaintiffs are required to take the depositions of numerous individuals.

Thus, Plaintiffs respectfully request leave of court to take a maximum of twenty-five (25) depositions of fact witnesses, exclusive of expert witness depositions as expert disclosures have not yet occurred in this case.

**III.**

**SAN DIEGO COUNTY DEFENDANTS' STATEMENT**

**1.     The Number Of Depositions Requested Are Disproportionate To The Legitimate Needs Of The Case .**

As pointed out by Plaintiffs, there is a mandatory statutory limit of 10 depositions per side.  Fed. R. Civ. P. 30(a).  If a party seeks more than the statutory limit, leave of court is required.  Fed. R. Civ. P. 30(a).  "Leave to take additional depositions shall be granted only 'to the extent consistent with Rule 26(b)(2).'"  *Dominguez v. Schwarzenegger*, 2010 WL 3341038, at *8 (N.D. Cal. Aug. 25, 2010).  Accordingly, "leave will not be granted where 'the discovery sought is unreasonably cumulative or duplicative,' or where 'the burden or expense of the proposed discovery outweighs its likely benefit.'"  *Ibid* (citing Fed.R.Civ.P. 26(b)(2)(C)(i)).

In addition, "A party seeking to exceed the presumptive number of depositions must make a particularized showing of the need for the additional discovery."  *Authentec, Inc. v. Atrua Techs., Inc.*, 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008); *see also Martensen v. Koch*, 2013 WL 11316743, at *1 (N.D. Cal. June 19, 2013).  "To that end, courts will generally not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right under Rule 30(a)(2)."  *Authentec, Inc. v. Atrua Techs., Inc.*, 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008)

> Rule 30(a)(2)(A) clearly contemplates that a party has already taken ten depositions before a motion is filed seeking leave of court for a proposed deposition that would result in more than ten depositions being taken under this rule.

*Dominguez v. Schwarzenegger*, 2010 WL 3341038, at *8 (N.D. Cal. Aug. 25, 2010); *see also Brooks v. Motsenbocker Advanced Developments, Inc.*, 2008 WL 2033712, at *4 (S.D. Cal. May 9, 2008) ("[B]ecause they have not yet taken any

depositions, Plaintiffs cannot make a particularized showing for why the additional depositions are necessary."); *see also Kaseberg v. Conaco, LLC*, 2016 WL 8729927, at *3 (S.D. Cal. Aug. 19, 2016) ("Parties should ordinarily exhaust their allowed number of depositions before making a request for additional depositions.") Having taken not a single deposition to date, a party "cannot possibly know what information it needs but cannot obtain from its 10 permitted deposition." *Authentec, Inc. v. Atrua Techs., Inc.*, 2008 WL 5120767, at *2 (N.D. Cal. Dec. 4, 2008).

Here, plaintiffs have yet to take a single deposition. Pursuant to the holding in *Authentec*, Plaintiffs cannot possibly know what they cannot obtain from the first 10 depositions they choose to take. In other words, Plaintiffs cannot make a particularized showing for why all of the depositions are necessary. Plaintiffs certainly have not made a particularized showing of the need to take five additional yet-to-be indentified witnesses. *See Kaseberg v. Conaco*, LLC, 2016 WL 8729927, at *4 (S.D. Cal. Aug. 19, 2016) (When the proposed deponents are unknown, "the Court has no information by which to evaluate whether these depositions would be cumulative, duplicative, burdensome, or relevant.")

Plaintiffs seek to take the depositions of both Deputy Bell and Deputy Carr. Plaintiffs contend Deputy Bell observed the decedent vomit during security check (Jun Decl. ¶ 17(f)) and that Deputy Carr found the decendent on the cell approximately one hour later. First of all, this is factually incorrect to the extent it was Deputy Bell, not Carr, that found the decedent sitting on the cell floor. Deputy Carr then responded to Deputy Bell's radio call for assistance. Second, and most important for purposes of this motion, it is unclear what information Plaintiffs thinks they can obtain from Deputy Carr that would not be available from Deputy Bell. Since Plaintiffs have yet to take Deputy Bell's deposition, they cannot make a particularized showing of the need to depose Deputy Carr. In other words, the

depositions of Deputies Bell and Carr are unnecessarily duplicative and/or cummulative.

As for Cloribel DeSilva, Plaintiffs' sole justification for demanding her deposition is that she is a County jail nurse. (Jun Decl., ¶ 7(12).) This is not a particularized showing of the need for her deposition. This is no showing whatsoever. Rogel Tingzon and Bienvenido Samonte are also nurses in the jail who Plaintiffs have noticed for deposition. Since the only reason Plaintiffs want to depose Ms. DeSilva is because she is a jail nurse, her deposition would be unnecessarily duplicative and/or cummalative of the depositions of Rogel Tingzon and Bienvenido Samonte, who are also nurses with the jail. Because Plaintiffs have not taken the depositions of any of these nurses, they cannot state with partiularity the need to depose all three.

Perhaps most egregious is Plaintiffs' insistence on taking the deposition of Bruce Leicht. Mr. Leicht retired from the County on December 31, 2011, nearly four years prior to Mr. Nunez death. By Plaintiffs' own admission, Mr. Leicht's testimony would be cummulative and/or duplicative of Dr. Alfred Joshua, and should therefore not be allowed.

Plaintiffs have also unilaterally noticed the depositions of the County's PMK for CLERB and Internal Affairs[1], which Plaintiffs contend are relevant to their *Monell* cause of action. This argument is without merit because Plaintiffs have yet to state a valid *Monell* claim and none of the prior in-custody deaths involve circumstances even remotely similar to the unique facts in this case.

Plaintiffs' First Amended Complaint does not identify any specific County policy that expressly directed its employees to violate Nunez's constitutional rights. Plaintiffs have also failed to articulate any pattern of similar constitutional

---

[1] Plaintiffs suggests that seeking these PMK depositions are some sort of accomodation to the County to avoid taking the deposition of Sheriff William Gore. This suggestion is incorrect.

violations. Plaintiffs certainly cannot point to any prior in-custody death involving hyponatremia or psychogenic polydipsia. In fact, when asked specifically in written discovery to "[i]dentify with specificity every County of San Diego policy or practice that YOU contend caused a violation of Ruben Nunez's constitutional rights" Plaintiffs answered that they do "not have sufficient personal knowledge to respond fully to this interrogatory and the information sought is equally available to propounding party."

If Plaintiffs cannot even identify a policy or pattern at issue to support their *Monell* claim, they certainly cannot show a particularized need for deposing irrelevant PMKs. This is particularly true because Internal Affairs did not investigate this case, homicide did. In fact, Internal Affairs does not investigate medical issues or in-custody deaths. They investigate offficer misconduct. Other than Plaintiffs' unsupported allegations, there has been no contention of any officer misconduct related to Mr. Nunez's death.

As to CLERB, it is an independent investigating body separate from the Sheriff's Department. *See* Co. San Diego Admin. Code §§ 340, 340.3(c). Plaintiffs have not shown a particularized need to depose any CLERB PMK because Plaintiffs have not identied any policy or pattern of practice to support their *Monell* claim. Moreover, much, if not all, of the information Plaintiffs seek with respect to both CLERB and Internal Affairs can be obtained through the less burdensome means of written interrogatories.

**2.** **Plaintiffs' Request Is Untimely**

"Rule 16 states that provisions to modify the number or length of depositions permitted under the rules should be considered before the initial scheduling order is issued." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 2009 WL 861733, at *4 (S.D. Cal. Mar. 25, 2009) (citing Fed.R.Civ.P. 16 advisory committee notes, 1993 Amendments.) In fact, the objective of Rule 30 is to highlight the obligation of counsel to develop a "mutual cost-effective plan for

discovery in the case." *Ibid* (citing Fed.R.Civ.P. 30 advisory committee notes, 1993 Amendments.) Parties wishing to enlarge the number of depositions permitted by Rule 30 should raise the issue at the initial Rule 26 planning meeting and again at scheduling conferences in order to 'eliminat[e] the need for special motions' such as the present motion." *Id.* at *2 (S.D. Cal. Mar. 25, 2009) (citing Fed.R.Civ.P. 30(a)(2)(A) advisory committee notes, 1993 Amendments.)

From the inception of this case, Plaintiffs' allegations have remained, for all pertinent purposes, unchanged. The original complaint included what Plaintiffs describe as *Monell* claims and claims for alleged violations of the ADA and Rehabilitation Act. (Doc. 1, Causes of Action 7, 10 and 11.) As soon as it moved to amend its complaint on August 18, 2016, Plaintiffs knew that this case would involve at least eight individual defendants and two entity defendants. (Docs. 10 & 10-1.) Thus, Plaintiffs' explanation as to why they allegedly need twenty-five depositions in this case was known to them from almost the very beginning of this case. Despite this information, Plaintiffs not only failed to raise the issue at any point prior to this motion, they specifically agreed to abide by the statutory limit of 10 deposition when they conferred and jointly submitted the discovery plan on September 19, 2016. Through that Joint Discovery Plan, Plaintiffs expressly agreed that "Discovery should be conducted in accordance with the limitations imposed by the discovery rules of the Federal Rules of Civil Procedure."

Based upon the Discovery Plan agreed to by the Plaintiffs, this Court's original Scheduling Order (Doc. 25) made no provision to increase the number of depositions. The original Scheduling Order was then modified at the mutual request of all parties on February 7, 2017 (Doc. 56) and again on April 24, 2017 (Doc. 95). None of the scheduling orders contained a provision to increase the number of depositions, because Plaintiffs never made any such request or even mentioned the issue. The parties have even participated in numerous discovery and case management teleconferences with the Court on February 27, 2017 (Doc.

70), March 13, 2017 (Doc. 76), March 20, 2017 (Doc. 79) and April 6, 2017 (Doc. 91). At none of these teleconferences did Plaintiffs suggest or discuss a "need" to take more than 10 depositions.

Plaintiffs have now formally noticed a total 17 depositions; the 12 names listed in Plaintiffs' Requested Deposition section above, plus an additional five depositions, which include an Internal Affairs PMK, a CLERB PMK, a Patton State Hosptial PMK, Dr. Edwin Ping, and Katherine Jackson[2]. Each of these five depositions were unilaterally noticed and scheduled by Plaintiffs without consulting the other parties about dates or availability. Plaintiffs are requesting three additional depositions of Dr. Jorge Naranjo, Dr. Sara Hansen, and Bruce Leicht, plus five yet-to-be identified witnesses. To make matters worse, Plaintiffs insists that all of their depositions must take place by the end of this month. To permit up to 25 depositions, not including experts, on the terms requested by Plaintiffs is not only unneccessary, it is unworkable. Plaintiffs were well aware of any purported "need" for this many depositions from nearly the beginning of this case and should be forced to suffer the consequences of not raising this issue in timely fashion as required by the rules.

## IV.

## PATTON STATE HOSPITAL DEFENDANTS' STATEMENT

### 1. The Request is Untimely.

This is now the fourth opportunity Plaintiffs have sought to address discovery issues that could have been discussed with the court – and resolved – at the outset of the case. Specifically, the original parties – Plaintiffs and the County Defendants –complied with this court's Chambers Rules/Civil Pretrial Procedures rule II(A)(1) and presented to the court a Joint Discovery Plan prior to the first

---

[2] Since Katherine Jackson is not identified in this motion, it is presumed that Plaintiffs are no longer interested in taking her deposition.

CMC set for 9/26/16.[3] That plan submitted September 19, 2016, specifically noted:

> "Discovery should be conducted in accordance with the limitations imposed by the discovery rules of the Federal Rules of Civil Procedure. There are no changes or limitations on discovery that are required in this case."

(*emphasis added*)

This was the time where any issue of increasing the number of permitted depositions should have been addressed, particularly as the court had just permitted the filing of a First Amended Complaint (FAC), which for the first time named four new State defendants  - the State of California, Patton Sate Hospital, Theresa Baroi and Wilda Ramos.[4] This court's original Scheduling Order (Doc. 25) made no provision to increase the number of depositions. The original Scheduling Order was then modified at the mutual request of all parties on February 7, 2017 (Doc. 56) and again on April 24, 2017 (Doc. 95), again without any provision to increase the number of depositions, although there was ample time and opportunity for Plaintiffs to seek such a remedy. Lastly, at the specific invitation of all counsel, the court has been intimately involved in discovery and case management through various teleconferences with counsel on February 27, 2017 (Doc. 70), March 13, 2017 (Doc. 76), March 20, 2017 (Doc. 79) and April 6, 2017 (Doc. 91). At none of these teleconferences did Plaintiffs suggest or discuss, or even hint at a "need" to

---

[3]     All of the Patton State Hospital Defendants had not been served with the First Amended Complaint by this time, and thus had no input into a Joint Discovery Plan, although Plaintiffs clearly had time to and presumably contemplated their discovery needs based on the First Amended Complaint filed August 30,2016.

[4]     To the extent Plaintiffs ask the court to infer that the factual basis for the requested depositions was not known until receipt of the County's or Patton's production responses (served on January 6, and March 8, 2017, respectively) the filing date of the FAC (August 30, 2016) belies that argument. A cursory review of the multiple factual allegations of the FAC are strikingly similar – if not identical – to the 'facts' Plaintiffs seek to explore at deposition.

take more than 10 depositions. They have, now, however, requested that all requested depositions be completed, at least, two weeks before the recently-extended expert designation date – June 12, 2017. To permit up to 25 depositions, not including experts, is on these terms is unwieldy, untenable and unnecessary. Plaintiffs apparently had sufficient factual information to seek leave of court to file the FAC well before the original Rule 16 Scheduling Conference on September 26, 2016.. Thus the "need" for this many depositions was known to Plaintiffs nearly nine months ago.

**2.      The Request is Disproportionate to the Legitimate Needs of the Case.**

Recognizing that civil discovery has "in many cases [ ] become too expensive, time-consuming , and contentious…[5]" effective December 1, 2015, the language of Federal Rules of Civil Procedure rule 26(b)(1) changed in several ways, the most significant being the adoption of a proportionality standard to govern the future need for and pursuit of discovery. The rule no longer refers to information "relevant to the subject matter involved in the action," but rather information "relevant to any party's claim or defense," neither of which are embodied in a currently viable FAC given Defendants' still pending Motion to Dismiss. The rule also no longer refers to information " reasonably calculated to lead to discovery of admissible evidence," but rather information "proportional to the needs of the case." As Chief Justice Roberts noted, "[t]he key here is careful and realistic assessment of actual need…."[6]

In this case Plaintiffs' strategy assumes that by pleading a plethora of ill-conceived causes of action against an increasing number of defendants – particularly give the actual averments made concerning the Patton State Hospital

---

[5] Chief Justice John Roberts, "2015 Year-end Report to the Federal Judiciary," December 31, 2015, at p. 4, available at http://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf

[6] *Ibid*.

defendants [7]– they should be entitled to a 250+% increase in the number of permitted depositions. The import of the Rule 26 proportionality amendment is that not every identified witness with some tangential knowledge must be deposed. Thoughtful and conscientious deposition planning is now judicially mandated, which would minimize expense and inconvenience to all parties. *See* Gilead Sciences, Inc. v. Merck & Co., Inc., N.D. Cal., Jan. 13, 2016, No. 5:13-CV-04057-BLF 2016 WL 146574.

The Declaration of Grace Jun (Jun Decl.) sets forth Plaintiffs' factual theory of liability as to the Patton State Hospital defendants i.e., failure to provide a written copy of a Water Intoxication protocol to the San Diego jail and medical staff. See Jun Decl., ¶¶ 19 – 20. Counsel apparently has a " 'Nursing Discharge Summary Checklist' form she asserts is "used by Patton (PSH 7246), used by nursing supervisors to audit discharge documents, specifically, in bold, indicates that copies of the water intoxication protocols (PSH 7485) should be included with discharge instructions." Jun Decl. ¶ 20. However, counsel critically misperceives the importance of this document. *It did not exist when Nunez was transferred to the*

---

[7] Salient allegations in the FAC as to the Patton State Hospital defendants include:

(a) that Ruben's "jail medical records showed he had "a history of …hyponatremia." (Doc. 15, p. 1, lines 17-19);

(b) that a county nurse "failed to alert medical staff and left Ruben in his cell with further access to water. No staff transferred Ruben to medical; watched Ruben; or cut off access to water. Approximately one hour later, a deputy found Ruben on the floor of his cell. Ruben had died of cerebral edema caused by excess consumption of water." (Doc. 15, p. 1, lines 24-28;

(c) Defendants left Ruben Nunez to die in his cell even after they saw that he "was symptomatic of polydipsia …." (Doc. 15, p. 2, lines 11-13;

(d) "County jail medical records showed he had a history of ….hyponatremia" – a condition caused by excessive water intake – which required water restriction." (Doc. 15, ¶ 36, p. 7, lines 3-5); and

(e) the County defendants "knew that Ruben Nunez suffered from polydipsia and hyponatremia, which required monitoring and limiting water intake." (Doc. 15, ¶ 87, p. 13, lines 6-7.

*San Diego Central Jail August 6, 2015, or when he died August 13, 2015*. In its production response to Plaintiffs two months ago Patton produced the applicable Nursing Discharge Summary Checklist (PSH0111) for Nunez' transfer. It contains no such instruction. More germane to this motion, it would not require seven depositions of Patton-related personnel to confirm this. In fact, it can be confirmed through one or two simple interrogatories.

Perhaps as striking the factual theory Plaintiffs posit - as revealed in counsel Jun's declaration - Dr. Hansen (a doctor working on behalf of the County of San Diego) had Nunez' medical records in hand, conducted an evaluation of Nunez, and wrote in Nunez' San Diego medical chart "hyponatremia require water restriction,"' which explicitly conveyed that Dr. Hansen understood well what the effect of *any* Water Intoxication protocol should be, that is to monitor, restrict and control Nunez' access to water. See Jun Decl., ¶ 17(e).

As to the Patton-related prospective deponents, Plaintiffs correctly notes that the five individually-named Patton defendants – Oreol, Moon, Fisher, Baroi and Ramos– are set to be deposed on May 9 and 10, 2017 at Plaintiffs' request. Defendants will produce these witnesses as agreed, noting they will then constitute 5 of the 10 depositions allotted to Plaintiffs. Regarding the requested depositions of Dr. Peng and the Patton State Hospital designee Plaintiffs also seek, the court should note that Defendants' Motion to Dismiss the FAC (Doc. 41 and 41-1) remains under submission with Judge Benitez. While the Motion to Dismiss remains unresolved, the specific causes of action pursued against the Patton State Hospital defendants i.e., failure to train, failure to supervise or discipline, and alleged violations of the Americans with Disabilities Act and Rehabilitation Act, Plaintiffs assert give rise to a 'right' to depose anyone concerning any information potentially bearing on these causes of action (including Dr. Peng and/or a Patton designee) are not currently viable nor sanctioned by the court.

Simply stated, given Plaintiffs' affirmative allegations in the FAC, coupled with the actual discovery conducted thus far (interrogatories, production requests and responses) the critical issue is not one of relevance to the lawsuit; it is the *disproportionality of seeking 25 depositions* (not including undisclosed experts). Permitting this many depositions plus experts is disproportionate to the *legitimate* needs of this case. Specifically, permitting 7 depositions of Patton-related personnel (5 of which are already agreed and scheduled) is excessive. However, as an accommodation to Plaintiffs' professed deposition needs these Defendants would agree to increase the number of non-expert depositions to twelve deponents, which still represents a 20% increase *plus experts*.

## V.

## POSITION OF CPMG AND DR. NARANJO

Plaintiffs' counsel has requested to take the depositions of Third-Party Defendants Jorge Naranjo, M.D. and Sara Hansen, M.D. Plaintiffs' counsel has not requested to take the deposition of any other individuals affiliated with CPMG. Pursuant to an agreement between Plaintiffs' counsel and counsel for Third-Party Defendant Jorge Naranjo, M.D., the deposition of Dr. Naranjo will be scheduled for a mutually agreeable date, time, and location, which will be followed by service of a deposition notice served by Plaintiffs, and then production of Dr. Naranjo for deposition in this action. If there is no agreement reached between all parties to exceed the 10 deposition limit and relief from the 10 deposition limit is not provided by the Court, and in the event the Plaintiffs elect to proceed with the depositions of others first and Plaintiffs exhaust their 10 deposition limit, Dr. Najano will not be voluntarily produced for a deposition by the Plaintiffs, per Federal Rules of Civil Procedure, Rule 30.

///

///

///

## VI.

## POSITION OF DR. HANSEN

At the request of Plaintiffs' counsel, and per an agreement between Plaintiffs' counsel and counsel for Third-Party Defendant Sara Hansen, M.D. to specially set the date, time and location for Dr. Hansen's deposition, which will be followed by service of notice to counsel for all parties, Dr. Hansen will be produced for a deposition in connection with this action. If there is no agreement reached between all parties to exceed the 10 deposition limit and relief from the 10 deposition limit is not provided by the court, and in the event the Plaintiffs elect to proceed with other deponents first and the Plaintiffs exhaust their 10 deposition limit, Dr. Hansen will not be voluntarily produced for a deposition by the Plaintiffs, per Federal Rules of Civil Procedure, Rule 30.

Dated: May 8, 2017

Respectfully Submitted,
IREDALE and YOO, APC
By: *s/ Grace Jun*
    GRACE JUN
    Attorneys for Plaintiffs The Estate
    of Ruben Nunez *et al.*

Dated: May 8, 2017

OFFICE OF COUNTY COUNSEL
By: *s/ Fernando Kish*
    FERNANDO KISH
    Attorney for Defendants County
    of San Diego *et al.*

Dated: May 8, 2017

OFFICE OF THE CALIFORNIA
ATTORNEY GENERAL
By: *s/ Daniel G. Eskue*
    DANIEL G. ESKUE
    Attorney for Defendants Patton
    State Hospital *et al.*

Dated: May 8, 2017       CARROLL, KELLY, TROTTER, FRANZEN, McKENNA & PEABODY

By: *s/ Jennifer A. Scher*
ROBERT L. McKENNA III
JENNIFER A. SCHER
Attorneys for Third-Party
Defendants, Correctional
Physicians Medical Group, Inc.,
and Dr. Jorge Naranjo

Dated: May 8, 2017       DOYLE, SCHAFER and McMAHON

By: *s/ Samuel R. Crockett*
TERRENCE JOSEPH SCHAFER
SAMUEL R. CROCKETT
Attorney for Third-Party
Defendant Dr. Sara Hansen


## **CERTIFICATION**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the contents of this document are acceptable to James Chapin (on behalf of Fernando Kish and County of San Diego defendants), Daniel Eskue, Jennifer Scher, and Samuel Crockett, and that I have obtained their authorization to affix their electronic signatures to this document.

Dated: May 8, 2017       s/ Grace Jun
GRACE JUN
Attorney for Plaintiffs