FILED

17 JUL 11 AM 10: 22

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY  MXN  DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF RUBEN NUNEZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>Defendants.<br><hr>COUNTY OF SAN DIEGO, et al.,<br><br>Cross Claimants,<br><br>v.<br><br>CORRECTIONAL PHYSICIANS MEDIAL GROUP, INC., et al.,<br><br>Cross Defendants. | Case No.: 3:16-cv-1412-BEN-MDD<br><br>**ORDER:**<br><br>**1) GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION;**<br><br>**2) GRANTING PLAINTIFFS' LEAVE TO AMEND THE FIRST AMENDED COMPLAINT;**<br><br>**3) DENYING DEFENDANTS' MOTION TO DISMISS** |

Before the Court are the Motion to Dismiss the First Amended Complaint (Docket No. 41) filed by Defendants State of California, Patton State Hospital, Harry Oreol, Kayla Fisher, Marcy Moon, Theresa Baroi and Wilda D. Ramos (collectively "State Defendants"), and the Motion for Reconsideration of the *Ex Parte* Motion to Amend the First Amended Complaint (Docket No. 78) filed by Plaintiffs. The motions are fully

1

briefed. The Court finds the motions suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1. For the reasons set forth below, the State Defendants' Motion to Dismiss is **DENIED**, Plaintiffs' Motion for Reconsideration is **GRANTED**.

## BACKGROUND[1]

This case arises out of the death of pre-trial detainee Ruben Nunez ("Ruben") on August 13, 2015 at the San Diego Central Jail ("Central Jail"), which is operated and managed by Defendant County of San Diego ("County"). At the time of his death, Ruben was forty-six years old and had suffered from schizophrenia his entire adult life.

In 2014, Ruben was off of his medication, became homeless, and was arrested for allegedly throwing a rock through a car window. A San Diego Superior Court judge found Ruben incompetent to stand trial, committed him to Defendant Patton State Hospital ("PSH"),[2] and ordered he be involuntarily medicated.

At PSH, Ruben was diagnosed with psychogenic water intoxication, also known as psychogenic polydipsia. People who suffer from this condition drink water uncontrollably, which can result in their death. It is estimated that up to 20% of people with schizophrenia also suffer from psychogenic polydipsia.

When patients are transferred from PSH to other facilities, a discharge form, which lists the patient's diagnoses, medical risks, and any special needs, is required to be sent to the other facilities. The discharge form is faxed to the facility before the patient's arrival, and a second copy is included with the documents that travel with the patient. There is an additional form that "lays out a strict protocol for monitoring water intake and blood levels" for psychiatric patients who have a problem with water intoxication. (Docket No. 15, First Amended Complaint ¶ 34.)

---

[1] The following overview of the facts are drawn from the allegations of Plaintiffs' First Amended Complaint. (Docket No. 15.) The Court is not making findings of fact.
[2] PSH is one of Defendant State of California's inpatient psychiatric hospitals.

2

3:16-cv-1412-BEN-MDD

On August 8, 2015, Ruben was transferred from PSH to the Central Jail to attend a competency hearing. Defendants Theresa Baroi ("Baroi"), Wilma D. Ramos ("Ramos"), and Doe 41[3] generated and checked Ruben's discharge document, and it was sent to the Central Jail. The discharge document referenced "water intoxication = weight adjustment." (*Id.* ¶ 33.) The additional form with instructions for monitoring water intake and blood levels was not generated for Ruben. "Ruben's [Central Jail] medical records showed he had 'a history of . . . hypoatremia' – 'which required water restriction.'" (*Id.* ¶ 36.) Central Jail staff did not limit or restrict Ruben's access to water.

On August 13, 2015, a deputy saw Ruben vomiting in his cell and called a nurse. Defendant Doe 1 arrived at the unit and gave Ruben his medication. Doe 1 did not alert medical staff and left Ruben in his cell. Approximately one hour later, a deputy found Ruben on the floor of his cell. He was not breathing. Ruben's death was determined to be caused by cerebral edema due to excess consumption of water.

Ruben was found with his clothing soiled with vomit and urine. A Medical Examiner's Office investigator noted that Ruben's cell "smelled of urine and vomit." (*Id.* ¶ 40.) Vomit was also observed in the sink, on a table, the floor, and the cell's lower bunk; bloody vomit was splattered on the wall. The Medical Examiner also found vomit in Ruben's nasal cavity, and dried vomit on both of his hands. Plaintiffs further allege that the "medical and jail staff left Ruben in an unsanitary condition in his own vomit and urine."

## PROCEDURAL HISTORY

On June 8, 2016, Plaintiffs filed a Complaint against Defendants County of San Diego, William Gore, Bruce Leicht ("Leicht"), Alfred Joshua ("Joshua"), Harry Oreol ("Oreol"), Kayla Fisher ("Fisher"), Marcy Moon ("Moon"), and Does 1-50. (Docket No.

---

[3] At all relevant times to the Complaint, Baroi, Ramos, and Doe 41 were PSH nurses.

1.) Defendant County filed its Answer on July 5, 2016. (Docket No. 7.) On August 29, 2016, this Court granted the joint motion to amend complaint filed by Plaintiffs and Defendant County. (Docket Nos. 10, 14.)

On August 30, 2016, Plaintiffs filed the operative First Amended Complaint ("FAC"), which added Defendants State of California, Patton State Hospital, Theresa Baroi, and Wilda D. Ramos. (Docket No. 15.) On September 19, 2016, Defendant County filed its Answer. (Docket No. 19.) On October 31, 2016, Defendants Joshua, Gore, and Leicht filed a joint Answer (Docket No. 28.), and a Motion for Leave to File a Third-Party Complaint (Docket No. 29), which the Court granted. (Docket No. 40.)

On December 6, 2016, Defendants State of California, Patton State Hospital, Oreol, Fisher, Moon,[4] Baroi, and Ramos filed the instant Motion to Dismiss the FAC. (Docket No. 41.) On December 12, 2016, Defendants/Third-Party Plaintiffs County, Joshua, Gore, and Leicht (collectively, "County Defendants") filed their Third-Party Complaint against Third-Party Defendants Correctional Physicians Medical Group, Inc. ("CPMG"), Jorge Naranjo ("Naranjo"), Sara Hansen ("Hansen"), and Roes 1-10. (Docket No. 43.) CPMG filed its Answer to the Third-Party Complaint on January 5, 2017. (Docket No. 48.)

On February 14, 2017, Plaintiffs filed an *Ex Parte* Motion to Amend the FAC (Docket No. 58, "*Ex Parte* Motion"), which the Court denied on February 28, 2017. (Docket No. 72.) Plaintiffs timely moved for reconsideration. (Docket No. 78.)

### DISCUSSION

**A.    Plaintiffs' Motion for Reconsideration of *Ex Parte* Motion to Amend**

The Court previously denied Plaintiffs' *Ex Parte* Motion for two reasons: 1) contrary to Plaintiffs' assertion otherwise, a majority of the Defendants filed oppositions to the *Ex Parte* Motion indicating they did not consent to amendment of the FAC; and

---

[4] The Court granted the parties' joint motion to dismiss Defendant Moon on June 13, 2017. (Docket No. 118.)

4

2) Plaintiffs failed to explain why justice required the Court to grant them leave. (Docket No. 72.)

Plaintiffs' Motion for Reconsideration argues that the Court should grant them leave to file a Second Amended Complaint because: 1) Defendants reneged on their agreement to permit Plaintiffs to amend the FAC, and 2) they are "entitled" to amend the FAC. (*See* Docket No. 78, "Recon. Mot.") The State Defendants and Third-Party Defendant CPMG each filed oppositions arguing they had only agreed to an extension of time for Plaintiffs to file a motion to amend the FAC and that Plaintiffs have not shown new or different facts to warrant reconsideration. (Docket Nos. 81-82.) Although the County Defendants did not oppose Plaintiffs' *Ex Parte* Motion, they filed an opposition to the reconsideration motion claiming it asserts "numerous and critical factual inaccuracies" regarding Plaintiffs' investigative diligence. (Docket No. 83 at 1.)

In this District, an application for reconsideration of a judge's prior order should identify "what new or different facts or circumstances are claimed to exist which did not exist, or were not shown, upon such prior application." CivLR 7.1.i. Plaintiffs represent that the State Defendants and CPMG improperly opposed their motion to amend after Plaintiffs obtained their written consent to amend the FAC. Plaintiffs further contend that due to the State Defendants' and CPMG's multiple requests for continuances of other case-related deadlines, their prior arguments regarding the alleged prejudice they would suffer if Plaintiffs were granted leave to amend no longer hold water. The State Defendants and CPMG maintain that they never provided Plaintiffs with written consent to amend the FAC, that they will suffer prejudice if Plaintiffs are granted leave, and that Plaintiffs have not satisfied Civil Local Rule 7.1.i. While the Court is not convinced by any of the parties' positions, it finds Plaintiffs complied with Civil Local Rule 7.1.i.

Plaintiffs rely on the "Joint Motion to Continue Scheduling Order to Amend the Complaint [Docket 47]" ("Joint Motion," Docket No. 52) as evidence of the State Defendants' and CPMG's written agreement to allow them to amend the FAC. The Joint Motion states that the named parties stipulate, agree and jointly apply to the Court for "*a*

5

*continuance of the date set out in the Scheduling Order* Regulating Discovery and other Pre-Trial Proceedings [Docket No. 47] (Amended Scheduling Order) with respect to the deadline to join other parties, amend the pleadings, or file additional pleadings currency [sic] set for January 27, 2017."[5] (Docket No. 52 at 2) (emphasis added.) However, the Amended Scheduling Order (Docket No. 47) does not provide a deadline to file amended pleadings. Rather, it clearly states: "*Any motion* to join other parties, to amend the pleadings, or to file additional pleadings shall be filed by January 27, 2017." (Docket No. 47 at 1) (emphasis added.) Thus, Plaintiffs cannot rely on the Joint Motion as incontrovertible evidence of the State Defendants' and CPMG's written consent. Moreover, the Joint Motion supports State Defendants' and CPMG's representation that they only consented to an extension of time in which Plaintiffs could file a motion to amend their complaint. As a result, Plaintiffs have failed to demonstrate they obtained all of the opposing parties' written consent to amend their complaint, and the Court is not required to grant them leave to amend. Fed. R. Civ. P. 15(a)(2).

With respect to Plaintiffs argument that post-*Ex Parte* Motion events indicate the prejudice claimed by the State Defendants and CPMG "dissipated or changed over seven days" or did not exist at the time they filed their *Ex Parte* Motion oppositions, this argument misses the mark. The Court denied Plaintiffs' Ex Parte Motion for the dual reasons that they did not obtain written consent *and* did not include any briefing whatsoever as to why the Court should grant them leave to amend.[6] Nevertheless, the Court finds Plaintiffs satisfied Civil Local Rule 7.1.i. because their Motion for Reconsideration includes what their *Ex Parte* Motion to Amend lacked: an independent

---

[5] Similarly, Plaintiffs' Motion for Reconsideration states that "the parties filed a Joint Motion for continuance of the date set in the Scheduling Order with respect to the deadline to amend the pleadings." (Docket No. 78 at 3.)

[6] Understandably, Plaintiffs may not have realized an independent basis was necessary due to their apparent mistaken belief that the State Defendants and CPMG consented to amendment of the FAC.

explanation of why the Court should grant them leave to amend. *See* CivLR 7.1.i (an application for reconsideration should include "what new or different facts and circumstances are claimed to exist which did not exist, *or were not shown*, upon such prior application") (emphasis added). Additionally, the Civil Local Rules are subordinate to the Federal Rules of Civil Procedure,[7] which directs courts to construe, administer, and employ the procedural rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *see also* CivLR 1.1.c (same).

Therefore, Plaintiffs' Motion for Reconsideration is **GRANTED**.

## B. Plaintiffs' Motion for Leave to Amend

Before trial, and after the time has elapsed for which a party may amend its pleading as a matter of course, Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that: "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Leave to amend under Rule 15(a)(2) should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit "has noted on several occasions . . . that the Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), . . . by freely granting leave to amend when justice so requires." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). "This policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).

As discussed above, the Court finds Plaintiffs have not demonstrated they obtained written consent from all opposing parties. Therefore, the Court must determine whether justice requires granting Plaintiffs leave to amend. Fed. R. Civ. P. 15(a). Courts consider "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the proposed

---

[7] *See* CivLR 1.1.c. ("These rules supplement the Federal Rules of Civil Procedure[.]").

7

amendment" in deciding whether justice requires granting leave to amend under Rule 15. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 370 U.S. 178, 182 (1962)). Although each factor may warrant consideration, "prejudice to the opposing party . . . carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052.

Although the Court disagrees that Plaintiffs are "entitled" to amend their pleading (Recon. Mot. at 14.), it finds that none of the Defendants' various claims of undue delay, bad faith, prejudice or futility weigh against granting leave. Specifically, the Court notes the record supports Plaintiffs' assertion that they were diligent in attempting to ascertain all potential defendants based on available discovery. The State Defendants' and County Defendants' argument that Plaintiffs' possessed information regarding the additional claims and defendants in the proposed Second Amended Complaint is speculative at best. With respect to CPMG's claim that it would suffer undue prejudice of having to defend 42 U.S.C. § 1983, wrongful death, and medical negligence claims, this claim is outweighed by the prejudice to Plaintiffs if they are not permitted to assert claims against potentially responsible parties, particularly in light of the Court's directive to liberally grant leave to amend in the interests of justice.

Accordingly, the Court grants Plaintiffs' request for leave to amend the FAC. Plaintiffs may file a Second Amended Complaint within seven (7) days of the date of this Order.[8]

**B.     State Defendants' Motion to Dismiss FAC**

Because the Court grants Plaintiffs leave to amend the FAC, the State Defendants' Motion to Dismiss is **DENIED as moot**.

---

[8] The Court notes Plaintiffs did not comply with CivLR 15.1.b when they filed their *Ex Parte* Motion to Amend. (Docket No. 58.) The Court reminds all parties that they are expected to comply with both the Federal Rules of Civil Procedure and the Civil Local Rules.

8


## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Reconsideration is **GRANTED** and the State Defendants' Motion to Dismiss is **DENIED as moot**. The Court grants Plaintiffs leave to file a Second Amended Complaint ("SAC") within **seven (7) days** of the date of this Order.

**IT IS SO ORDERED.**

DATED: July 10, 2017

HON. ROGER T. BENITEZ
United States District Judge