# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF RUBEN NUNEZ by and through its successor-in-interest LYDIA NUNEZ, ALBERT NUNEZ, and LYDIA NUNEZ,<br><br>Plaintiff,<br><br>v.<br><br>CORRECTIONAL PHYSICIANS MEDICAL GROUP, INC., et al.,<br><br>Defendants, Third-Party Plaintiffs,<br><br>v.<br><br>CORRECTIONAL PHYSICIANS MEDICAL GROUP, INC., et al.,<br><br>Third-Party Defendants. | Case No.: 16cv1412-BEN-MDD<br><br>**ORDER ON JOINT DISCOVERY MOTION PRESENTING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>**[ECF No. 150]** |

Before the Court is the parties' Joint Discovery Motion filed on August 7, 2017. (ECF No. 150). The joint motion presents Plaintiffs' motion to compel production of documents from Defendant Patton State Hospital ("Patton"). (*Id.*). The dispute involves disclosure of documents created by Patton pertaining to meetings held following the death of Ruben Nunez.

1

## LEGAL STANDARD

The Federal Rules of Civil Procedure generally allow for broad discovery, authorizing parties to obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Fed. R. Civ. P. 26(b)(1). "Information within the scope of discovery need not be admissible in evidence to be discoverable." *Id.* District courts have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F. 3d 732, 751 (9th Cir. 2002). Similarly, district courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." *Id.* at 34(b)(2)(B). If the responding party chooses to produce responsive information, rather than allow for inspection, the production must be completed no later than the time specified in the request or another reasonable time specified in the response. *Id.* An objection must state whether any responsive materials are being withheld on the basis of that objection. *Id.* at 34(b)(2)(C). An objection to part of a request must specify the part and permit inspection or production of the rest. *Id.*

## DISCUSSION

Request for Production ("RFP") No. 21

In this RFP, Plaintiffs request documents generated, produced, written, drafted, edited, compiled, or used by any Patton employee in preparation,

anticipation, or utilization "at the meeting" to review the circumstances of Nunez's death. (ECF No. 150 at 3). While this RFP is vaguely worded, "the meeting" appears to be a January 2016 Morbidity/Mortality Interdisciplinary Review Committee ("MIRC") meeting.

Defendant Patton has objected, stating that they are entitled to official information, deliberative process, and self-critical analysis privileges. On July 7, 2017, Defendants filed a privilege log and declaration. (ECF No. 150-4, 150-5). The Privilege Log identifies these three documents as (1) Internal Interdiscipline/Service Review of Death Summary; (2) DSH External Mortality Review; and (3) E-mail to M. Gomes re: MIRC discussions. (ECF No. 150-4).

According to Dr. Kayla Fisher, Medical Director for the Department of State Hospitals – Patton State Hospital, the primary predominant purpose of a MIRC meeting is to "explore ways to reduce morbidity or mortality, and/or improve patient outcomes." (ECF No. 150-5 at ¶2). In her declaration, Dr. Fisher, explains why Defendants believe the three documents fall within the scope of the three claimed privileges.

1. Official Information Privilege

"Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir.1990) (citing *Kerr v. United States Dist. Ct. for the N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir.1975)). The discoverability of official documents should be determined under the "balancing approach that is moderately pre-weighted in favor of disclosure." *Kelly v. City of San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987). The party asserting the privilege must properly invoke the privilege by making a "substantial threshold showing." *Id.* at 669. To meet this showing, Defendants "must submit a declaration or affidavit from a

responsible official with personal knowledge of the matters to be attested to in the affidavit." *Dowel v. Griffin*, 275 F.R.D. 613, 616 (S.D. Cal. Aug. 17, 2011) (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 613). Specifically, "[i]n order to fulfill the threshold requirement, the party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit. The affidavit must include: (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made." *Soto*, 162 F.R.D. at 613 (quoting *Kelly*, 114 F.R.D. at 670). If the nondisclosing party does not meet this initial burden of establishing cause to apply the privilege, the court must order disclosure of the documents; if the party meets this initial burden, the court generally conducts an in camera review of the material and balance each party's interests. *Soto,* 162 F.R.D. at 613; *Kelly,* 114 F.R.D. at 671.

Here, Patton has failed to meet the threshold burden because they have not satisfactorily declared requirements 3 through 5. The declaration did not identify the specific governmental or privacy interest that would be threatened by disclosure of these three documents. Further, Dr. Fisher's declaration has not described a risk to significant governmental or privacy interests that would not be overcome through a protective order. Rather, Dr.

4

Fisher's opinion states that disclosure would "erode integrity and security of the protected documents" and "affect the morale" of those who took part in creating or using the documents in question. (ECF No. 150-5 at ¶7). That there might be lower morale among the unnamed MIRC participants if these documents were disclosed under a protective order does not rise to the level of harm to an unidentified significant governmental or privacy interest.

Since Patton has not met their burden, the Court is not required to conduct an in camera review and may require production of the requested documents. As such, Defendants' objection on the basis of official information privilege is **OVERRULED**.

2. Deliberative Process Privilege

Patton argues that as a government agency, the deliberative process privilege allows for open and robust discussion among hospital staff and applies here to keep the documents used in preparation for and about the MIRC meeting unavailable for discovery. Plaintiff argues the deliberative process privilege does not apply because Patton failed to make the threshold showing required to invoke the privilege.

The deliberative process privilege permits governmental agencies to withhold documents that "reflect[] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Hongsermeier v. C.I.R.*, 621 F.3d 890, 904 (9th Cir. 2010) quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The purpose of the deliberative process privilege is to "promote frank and independent discussion among those responsible for making governmental decisions," and ultimately to "protect the quality of agency decisions." *F.T.C. v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1994). In order to be protected by the privilege, a document must be both

"predecisional" and "deliberative." *Id.* A document is "predecisional" if it was "prepared in order to assist an agency decision maker in arriving at his decision." *Hongsermeier*, 621 F.3d at 904. A document is "deliberative" if its disclosure would "expose an agency's decision making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.* "[W]henever the unveiling of factual materials would be tantamount to the 'publication of the evaluation and analysis of the multitudinous facts' conducted by the agency, the deliberative process applies." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1119 (9th Cir. 1988) (citation omitted).

The deliberative process privilege is a qualified privilege. *Warner Communications*, 742 F.2d at 1161. A party may obtain materials protected by the privilege if the need for the information overrides the government's interest in non-disclosure. *Id.* The following factors are considered in deciding whether to override the privilege: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.*

Here, through Dr. Fisher's declaration, Patton has not indicated how the documents they are seeking to withhold directly contribute to the formulation of policy. The declaration makes no mention of formulating governmental decisions in the wake of the MIRC meeting. Further, Patton does not assert that MIRC meetings are geared toward policymaking at all or that they are attended by policymakers. Dr. Fisher simply states that a MIRC session's predominant purpose is exploring ways to reduce morbidity and mortality and/or improving patient outcomes. (ECF No. 150-5 at ¶2). While a MIRC meeting may aim to guide future medical decisions, not every

decision results in a governmental policy and as such the Court finds that Patton has not shown how the MIRC meeting and these associated documents are deliberative. Patton cannot invoke the deliberative process privilege to shield discovery of these three documents.

As such, Patton's assertion of deliberative process privilege is **OVERRULED**.

3. State and Federal Self-Critical Analysis Privileges

Lastly, Patton encourages the Court to endorse a federal self-critical analysis privilege or, in the alternative, apply California Evidence Code § 1157(a). (ECF No. 150 at 19, 23). The parties agree that there is no unequivocal federal case law that supports self-critical analysis privilege, however Patton argues that some courts have adopted a privilege and others have left the door open to the possibility of said privilege.

In arguing for and against a federal privilege, the parties both cite *Agster v. Maricopa Cty.*, 422 F.3d 836 (9th Cir. 2005). In *Agster*, parents of a prisoner who died in custody of county sheriff's department brought action against the county. Plaintiffs sought discovery of the mortality review and defendant declined asserting the peer review privilege. The Ninth Circuit declined to create peer review privilege for county correctional health services' 'mortality review' of circumstances surrounding the prisoner's death.

Similarly, in *Leon v. County of San Diego,* 202 F.R.D. 631 (S.D. Cal. 2001), a § 1983 action against the county, sheriff's department, and sheriff, alleging deliberate indifference to detainee's medical condition, failure to train and supervise, and existence of policy, practice or custom creating constitutional violations, the court held (1) nursing peer review records from county detention facility were relevant to municipal liability and, therefore, were discoverable; (2) provision of California Evidence Code privileging

7

medical peer review records did not apply to protect records from discovery; and (3) self-critical analysis privilege under federal common law did not apply to protect records from discovery.

While Plaintiffs cite *Agster* in support of discovery, Patton argues that the decision left the door open to hospitals' use of the critical self-analysis privilege, pointing to the decision's differentiation between the defendant Correctional Health Services and an "ordinary hospital." *Agster*, 422 F.3d at 839. The assumption is that Patton considers itself to be an "ordinary hospital." Patton's population is, according to their website, over 90% individuals who are either incompetent to stand trial, mentally disordered offenders, individuals deemed not guilty by reason of insanity, or sexually violent predators. While Patton and the correctional medical provider in Agster may not be entirely the same, both have a correctional mission that must be taken into account when seeking to apply the self-critical analysis privilege. Thus, this privilege is not recognized by the Ninth Circuit in the context of the instant case.

Were the court to adopt the self-critical analysis privilege, Patton would need to establish that the documents met the following three criteria: "first, the information must result from a critical self-analysis undertaken by the party seeking protection; second, the public must have a strong interest in preserving the free flow of the type of information sought; finally, the information must be of the type whose flow would be curtailed if discovery were allowed." *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423, 426 (9th Cir. 1992).

As a threshold matter here, Dr. Fisher's declaration does not indicate that the MIRC is a self-critical analysis or a peer review process. As it is, the words "self-critical" or "peer-review" are not in the declaration at all. Nor has

Patton provided any law that would serve as a gap filler to establish that a MIRC session is inherently a self-critical or peer-review practice. As stated above, Dr. Fisher's declaration simply states that a MIRC session's discussions "explore ways to reduce morbidity or mortality, and/or improve patient outcomes." (ECF No. 150-5 at ¶2). The declaration does not detail through what means this exploration occurs.

Further, Patton encourages the Court to look to California Evidence Code § 1157 for guidance. (ECF No. 150 at 23.) State privilege law applies to purely state law claims brought in federal court pursuant to diversity jurisdiction; however, state law claims that are pendent to federal question cases are governed by federal privilege law. *Burrows v. Redbud Cmty. Hosp. Dist.*, 187 F.R.D. 606, 610 (N.D. Cal 1998). In the instant case the Court's jurisdiction is grounded on 42 U.S.C. § 1983 based on Plaintiff's civil rights claims. Thus, federal privilege law applies.

As such, Patton's assertion of the self-critical analysis privilege is **OVERRULED**.

## CONCLUSION

Accordingly, Patton's objection and assertion of the deliberative process privilege with regard to the three documents at issue is **OVERRULED**. The Court compels Patton to produce the three documents at issue to Plaintiff in response to Request for Production No. 21.

**IT IS SO ORDERED.**

Dated: September 11, 2017

Hon. Mitchell D. Dembin
United States Magistrate Judge