UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF RUBEN NUNEZ by and through its successor-in-interest LYDIA NUNEZ, ALBERT NUNEZ, and LYDIA NUNEZ,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al,<br><br>Defendants. | Case No.: 3:16-cv-01412-BEN-MDD<br><br>**ORDER:**<br>**GRANTING IN PART AND DENYING IN PART PARTIES' MOTIONS IN LIMINE [Docs. 325, 326, 327]; BIFURCATING TRIAL; AND DENYING AS MOOT DEFENDANT HANSEN'S MOTIONS IN LIMINE [Doc. 324].** |

Plaintiffs, Defendant CPMG, and Defendant Jorge Naranjo together filed 30 motions in limine in preparation for trial set for June 4, 2019. [Docs. 325-327.] For the following reasons, the motions are **GRANTED IN PART AND DENIED IN PART**.[1]

## I.   LEGAL STANDARD

Rulings on motions in limine fall entirely within this Court's discretion. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce v. United States*, 469

---

[1] Defendant Sara Hansen filed 13 motions in limine. [Doc. 324.] Because Plaintiffs and Defendant Hansen filed a notice of settlement, [Doc. 393], Defendant Hansen's motions in limine are DENIED AS MOOT.

1

U.S. 38, 41-42 (1984)). Evidence is excluded on a motion in limine only if the evidence is clearly inadmissible for any purpose. *Fresenius Med. Care Holdings, Inc., v. Baxter Int'l, Inc.*, 2006 WL 1646113, at *3 (N.D. Cal. June 12, 2006). If evidence is not clearly inadmissible, evidentiary rulings should be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context. *See Bensimon*, 172 F.3d at 1127 (when ruling on a motion in limine, a trial court lacks access to all the facts from trial testimony). Denial of a motion in limine does not mean that the evidence contemplated by the motion will be admitted at trial. *Id.* Instead, denial means that the court cannot, or should not, determine whether the evidence in question should be excluded before trial. *Id.*; *see also McSherry v. City of Long Beach*, 423 F.3d 1015, 1022 (9th Cir. 2005) (rulings on motions in limine are subject to change when trial unfolds).

## II. PLAINTIFFS' MOTIONS IN LIMINE NOS. 1-6 [Doc. 327]

### A. <u>Motion No. 1 – Argument that the Patton Defendants Failed to Provide Adequate Notice of Decedent's Condition or Caused His Death</u>

Plaintiffs seek to exclude evidence and argument that the Patton State Hospital Defendants failed to provide adequate notice to the Central Jail (and CPMG's employees at the Central Jail) of Ruben Nunez's condition via the Nursing Discharge Summary ("NDS") or that the Patton Defendants somehow caused his death. In support, Plaintiffs argue the law of the case precludes such argument because of the Court's findings in its summary judgment order dismissing the Patton Defendants by holding "a jury could not reasonably find the Nurse Defendants' documentation efforts to be so insufficient as to put the Jail on notice of Mr. Nunez's condition." [Doc. 322, p. 21.]

"The law-of-the-case doctrine generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Askins v. U.S. Dep't of Homeland Security*, 899 F.3d 1035, 1042 (9th Cir. 2018). "The doctrine applies most clearly where an issue has been decided by a higher court[.]" *Id.* Importantly, "[t]he law of the case doctrine does not preclude a court from reassessing its own legal rulings in the same case." *Id.* "For the doctrine to apply, the issue

in question must have been decided explicitly or by necessary implication in the previous disposition." *Pit River Home and Agr. Co-op. Ass'n v. United States*, 30 F.3d 1088, 1097 (9th Cir. 1994).

Defendant CPMG and Dr. Jorge Naranjo correctly argue that the law of the case doctrine does not apply here. As Defendants contend, the Court did not explicitly rule the NDS's deficiencies had *no* bearing on the actions of the jail medical staff or were inadequate to put Dr. Naranjo or CPMG on notice of Ruben Nunez's medical needs. Rather, the Court granted summary judgment for the Patton Defendants because it found, "Without more, Plaintiffs have not carried their burden to show causation such that a reasonable jury could find in their favor." [Doc. 322, p. 20.] The Court's granting of summary judgment for the Patton Defendants because of Plaintiffs' failure to offer sufficient evidence showing causation or a lack of notice should not preclude Defendants from presenting evidence at trial that the NDS was insufficient to provide them with adequate notice. Because the law of the case doctrine does not apply, and to hold otherwise might prevent Defendants from presenting an adequate defense, Plaintiffs' motion is **DENIED**.

### B. Motion No. 2 – References to Plaintiffs' Settlement with the County

Plaintiffs seek to exclude any references to the settlement they reached with the County Defendants under FRE 408. Rule 408 bars the admission of settlement agreements to prove liability. Plaintiffs further argue a settlement amount would lead to confusion and undue prejudice at trial. Defendants do not oppose. The motion is **GRANTED**.

### C. Motion No. 3 – Expert Testimony for Failure to Comply with Rule 26

Plaintiffs move to exclude Dr. Michael C. Fishbein as an expert witness because he did not submit an expert report, as required by Rule 26(a)(2)(B). Rule 37(c) precludes a party from using a witness or information at trial that was not properly disclosed "unless the failure was substantially justified or harmless." Because Defendants do not oppose, the motion is **GRANTED**.

### D. Motion No. 4 – Negative Character Evidence as to Ruben Nunez

Plaintiffs contend that evidence of the Penal Code violations for which Ruben Nunez was arrested, his arrest, prior convictions, and alleged history of drugs must be excluded as not relevant and inadmissible under Rule 403. Defendants agree that evidence of Ruben Nunez's "prior arrests and convictions, as well as the specific charges made against him prior to his commitment to Patton State Hospital, are irrelevant." [Docs. 330, p. 6 and 329, p. 5.] Defendants argue, however, that it would be impossible to not mention the following facts: Mr. Nunez being charged with a crime, found incompetent to stand trial, committed to Patton State Hospital for restoration of competency, and subsequently transferred to San Diego Central Jail to attend a court hearing. The Court agrees, and the motion is **GRANTED IN PART AND DENIED IN PART**. Evidence of Ruben Nunez's specific prior convictions and prior arrests, as well as the specific charges made against him prior to his commitment to Patton State Hospital are excluded under Rule 403. As to evidence that Ruben Nunez was charged with *a* crime, found incompetent to stand trial, committed to Patton State Hospital for restoration of competency, and subsequently transferred to San Diego Central Jail to attend a court hearing, the motion is **DENIED**.

### E. Motion No. 5 – Criminal History of Ruben's Father, Albert Nunez

Plaintiffs seek to exclude evidence of Albert Nunez's criminal convictions for bank robbery and his prior drug use history from the 1980s to 1990s. As to Albert Nunez's convictions, FRE 609(a)(2) provides that no conviction older than 10 years is admissible unless (1) it satisfies FRE 403 and (2) the proponent gives adequate notice of an intent to offer the conviction. Defendants respond that they do not intend to introduce evidence of the *specific* crimes Albert Nunez committed. However, they oppose to the extent Albert Nunez's incarceration history is relevant to Albert Nunez's relationship with his son to support his state law wrongful death claim and his § 1983 claim for loss of familial association.

In California, non-economic damages for wrongful death include "the loss of [the decedent's] love, companionship, comfort, care, assistance, protection, affection, society,

[and] moral support." CACI 3291. As to Plaintiffs' § 1983 claim for loss of familial companionship, the Supreme Court has emphasized that "the mere existence of a biological link does not merit equivalent constitutional protection." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1058 (9th Cir. 2018) (quoting *Lehr v. Robertson*, 463 U.S. 248, 262 (1983)). Rather, "even biological parents must maintain consistent involvement in a child's life and participation in child-rearing activities for their relationship to be entitled to the Fourteenth Amendment protections at issue." *Id.* Thus, because Albert Nunez has put his parental relationship at issue by both claiming its protection under the Fourteenth Amendment and claiming non-economic damages for the loss of that relationship, evidence related to Albert Nunez's relationship with his son, including that he was incarcerated, may be admissible at trial. Accordingly, the motion is **GRANTED IN PART**, only to exclude evidence of Albert Nunez's specific convictions. The motion is **DENIED** as to all other evidence.

### F. Motion No. 6 – Character Evidence as to Ruben's Mother, Lydia Nunez

Similarly, Plaintiffs seek to exclude evidence of Lydia Nunez's substance abuse problems and a guilty plea to a misdemeanor DUI from the 1960s or 1970s. Plaintiffs contend that Lydia Nunez became sober on August 25, 1995 and has remained dedicated to her sobriety for over twenty years, and thus, such evidence is not relevant and would prejudice the jury. Defendant Naranjo responds that he does not seek to introduce evidence of Lydia Nunez's specific crimes. He argues, however, that Lydia Nunez's history of substance abuse while her son was growing up is relevant to the jury's evaluation of their relationship for her § 1983 loss of familial companionship claim and her claim for non-economic damages for wrongful death. Accordingly, the motion is **GRANTED IN PART**, only to exclude evidence of Lydia Nunez's specific convictions. The motion is **DENIED** as to all other evidence.

III. **DEFENDANT CPMG'S MOTIONS IN LIMINE NOS. 1-8 & DEFENDANT NARANJO'S NOS. 1-8 [Docs. 325, 326]**[2]

A. <u>Motion No. 1 – Other Litigation, Proceedings, or Disciplinary Act</u>

In essence, Defendants seek a blanket exclusion of all evidence "concerning other lawsuits, proceedings, or disciplinary action to which CPMG, its independent contractors, or its experts were a party." [Doc. 325, p. 2.] Plaintiffs correctly respond that the motion is vague and overbroad. Given the lack of specific evidence or testimony Defendants seek to preclude, the Court cannot evaluate its admissibility.

Defendants do, however, specifically identify one document entitled, "Quality Assurance/Quality Improvement July-September 2015 Audit Report." This report reflects an audit of patient cases from 2015, and Ruben Nunez's case was briefly reviewed in the document. The Report also states, "Provider 151 was informed of the inappropriateness of not reviewing state hospital returnee." Defendants contend this evidence is not admissible under FREs 401, 402, 403, 404, and 407, as well as the California Evidence Code sections 787 (addressing character evidence) and 1151 (addressing subsequent remedial measures). Contrary to Defendants' raising FREs 401, 402, and 403, the Court finds the Report may be relevant to show, for example, that Dr. Naranjo had a habit of not reviewing medical records, contrary to the prevailing standard of care.

As to Defendants' suggestion that the Report is an inadmissible subsequent remedial measure under FRE 407, the Court disagrees. *See, e.g., Aranda v. City of McMinnville*, 942 F. Supp. 2d 1096, 1103 (D. Or. 2013) (explaining that a defendant's internal investigations and reviews might constitute the initial step toward identifying the need for particular remedial action, but "they are not themselves excluded under Rule 407."); *Rigsbee v. City and Cnty of Honolulu*, 2019 WL 1102496, at *2 (D. Haw. Mar. 7, 2019) (same). "By its terms, [FRE 407] is limited to measures that would have made the harm

---

[2] Because Defendant CPMG and Naranjo's motions in limine 1 through 8 are virtually identical, the Court considers them together.

less likely to occur; it does not extend to post-incident investigations into what *did* occur." *Id.* Finally, because the Report may be relevant to show habit, FRE 405's prohibition of character evidence does not necessarily apply to exclude the Report. In sum, the Report may be admissible at trial, making it an improper subject for a motion in limine. For the previous reasons, the motion is **DENIED**.

### B. Motion No. 2 – Limit Expert Testimony Under Rule 26

Defendants move to limit Plaintiffs' expert, Dr. Gage, to testifying about the opinions he expressed at his deposition or previously disclosed in compliance with Rule 26(a)(2)(B). Plaintiffs agree that expert testimony must be limited to the Rule 26 report and to testimony provided during deposition. Because the Court finds this motion is consistent with Federal Rule of Civil Procedure 26, the motion is **GRANTED**.

### C. Motion No. 3 – Preclude Legal Opinions from Expert Witnesses

Defendants seek to preclude Dr. Gage from offering "legal opinions" at trial by arguing that testimony concerning various terms Dr. Gage offered should be excluded, including "negligence, gross negligence, minor departures from the standard of care, substantial departures from the standard of care, egregious departures from the standard of care, and complete and utter failure." [Doc. 326, p. 6.] First, as an expert, Dr. Gage is permitted to testify about the standard of care. Further, terms like "minor," "substantial," and "egregious" are not necessarily legal terms. Finally, under FRE 704(a), "[a]n opinion is not objectionable just because it embraces an ultimate issue." To the extent Dr. Gage attempts to offer legal conclusions at trial, Defendants may object. Here, however, the Court finds a blanket exclusion of testimony concerning various terms is not warranted. The motion is **DENIED**.

### D. Motion No. 4 – Exclude Evidence of $250,000 MICRA Limit

Plaintiffs are claiming non-economic damages for their medical negligence claims against Defendants. The Medical Injury Compensation Reform Act ("MICRA") limits non-economic losses to $250,000 in actions against healthcare providers. The parties do not dispute that Defendants are healthcare providers and that the $250,000 limit applies.

Thus, Defendants move to exclude evidence of the damages limit at trial. Plaintiffs respond that they do not intend to raise the MICRA limit at trial but reserve the right to should Defendants open the door. Plaintiffs, however, do not offer an example of how Defendants might "open the door" in a way that testimony about MICRA's damages limit would be necessary. Because the Court finds the MICRA limit is not relevant and could improperly influence the jury's verdict, the motion is **GRANTED**. If Plaintiffs believe Defendants have "opened the door," however, they may seek the Court's reconsideration.

### E. Motion No. 5 – Evidence of Liability Insurance

Defendants move to exclude evidence of liability insurance. FRE 411 provides, "Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." Plaintiffs respond that they do not intend to raise the issue, unless Defendants open the door, *e.g.*, by introducing evidence of personal financial hardship or burden. Accordingly, the motion is **GRANTED** insofar as this evidence is inadmissible for the parties' case-in-chief.

### F. Motion No. 6 – Evidence Not Previously Produced

Without specifying any particular evidence, Defendants request a blanket exclusion of all evidence not previously produced. Plaintiffs respond that they do not intend to introduce any evidence not previously identified in discovery but reserve the right to use documents relevant to witnesses' credibility on cross-examination. Because this motion does not concern any specific evidence and is consistent with Federal Rules of Civil Procedure 26 and 37, the motion is **GRANTED**.

### G. Motion No. 7 – Speculative Causation Testimony

Again, without specifying any particular evidence, Defendants request a blanket exclusion of any "speculative causation testimony" about Ruben Nunez's death. Because the Court is unclear about what evidence Defendants seek to exclude and thus, cannot evaluate its admissibility, the motion is **DENIED**.

### H. Motion No. 8 – Expert Testimony About Personal Practices

Defendants seek to exclude any expert testimony about the expert's personal practices in various circumstances, as opposed to what the standard of care in the community requires. For California state law medical malpractice claims, California competency rules apply. *Trujillo v. Cnty of Los Angeles*, 751 Fed. Appx. 968, 972 (9th Cir. 2018). Thus, the expert testifying "must possess and use the learning, care and skill normally possessed and exercised by practitioners of that specialty under the same or similar circumstances." *Liebsack v. United States*, 731 F.3d 850, 856-58 (9th Cir. 2013). To the extent Defendants object to an expert's testimony at trial, their objection is governed by the Federal Rules of Evidence, not California evidentiary rules. Regardless, because Defendants do not identify the particular testimony Defendants seek to exclude and the fact that such testimony's admissibility likely cannot be evaluated in a vacuum, the motion is **DENIED**.

## IV. DEFENDANT NARANJO'S MOTIONS IN LIMINE NOS. 9-16 [Doc. 326]

### A. Motion No. 9 – Medical Testimony by Plaintiffs and Lay Witnesses

Defendant Naranjo seeks to exclude plaintiffs' or other lay witnesses' testimony that is critical of Dr. Naranjo's care and treatment. In support, Defendant Naranjo contends such criticisms would not be relevant because opinions on medical standards of care are particularly within the knowledge of experts, not lay persons, and would be prejudicial. Plaintiffs respond that they do not anticipate either Lydia or Albert Nunez will provide medical expert testimony, but because Defendant Naranjo has not identified any other witnesses he contends should not offer medical testimony, Plaintiffs cannot respond. The Court acknowledges that the underlying legal basis for the motion is valid, but because the motion is vague and overbroad, it is **DENIED**.

### B. Motion No. 10 – Cumulative Expert Testimony

Defendant Naranjo moves to exclude "cumulative expert testimony." Plaintiffs respond by joining the motion, noting that both defendants have designated Dr. Lev and Dr. Smith and requesting that the Court limit the number of witnesses allowed to testify as

to specific areas of testimony. Because the parties do not identify which experts should be struck and why, the Court is unable to evaluate the motion, and it is **DENIED**.

### C. Motion No. 11 – Plaintiffs' Expert Testimony on Direct About Source Material

Defendant Naranjo moves for an order precluding all experts from testifying on direct examination about source material, citing California evidence law that precludes such material as inadmissible hearsay. Under *Erie Railroad Co. v. Thompkins*, 304 U.S. 64 (1938), the substantive law of the state applies to the state law causes of action. As relevant here, however, "[m]ost evidentiary rules are procedural in nature, and the Federal Rules of Evidence ordinarily govern." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003). Defendant Naranjo has not demonstrated this particular evidentiary rule to be so "intimately bound up with the state's substantive decision making" that it must be given full effect in federal court. *Id.* Thus, FRE 803, which directly conflicts with the California rule, will govern and permits an expert to rely upon "[a] statement contained in a treatise, periodical, or pamphlet" on direct examination. The motion is **DENIED**.

### D. Motion No. 12 – Motion to Bifurcate Re: Punitive Damages and Fees

Defendant Naranjo next moves to bifurcate trial as to punitive damages and attorneys' fees. First, as Plaintiffs respond, the issue of attorneys' fees under 42 U.S.C. § 1988 is not a jury question; it is a matter decided by the Court. Nonetheless, considering the motion's request for bifurcation as to liability and punitive damages, the Court is persuaded that bifurcation is warranted. In support of bifurcation, Defendant Naranjo argues that Plaintiffs will likely present evidence of his financial condition, which may cause the jury to award punitives without first finding his conduct to be "malicious, oppressive or in reckless disregard of the plaintiff's rights." Model Civ. Jury Inst. 9th Cir. 5.5 (2007). Rule 42(b) "confers broad discretion upon the district court to bifurcate at trial, thereby deferring costly and possibly unnecessary proceedings." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004). Here, the Court is persuaded that the financial information raised by Defendant Naranjo is likely to take up at least some

time and could lead to jury confusion. Thus, the motion to bifurcate trial as to separate liability and punitive damages phases is **GRANTED**.

### E. Motion No. 13 – Plaintiffs' Experts Testimony About Witness Credibility

Defendant Naranjo moves to preclude Plaintiffs' experts from testifying about any witness's credibility. Plaintiffs respond that they have no objection, so long as the motion applies to both sides. Accordingly, the motion is **GRANTED** and applies to all expert witnesses.

### F. Motion No. 14 – Settlement Discussions and Offers of Settlement

Defendant Naranjo moves to exclude evidence of settlement discussions and offers of settlement. Plaintiffs have no objection. The motion is **GRANTED**.

### G. Motion No. 15 – Precluding Witnesses from the Courtroom

Defendant Naranjo moves to exclude all non-party trial witnesses from the courtroom during any proceedings where that individual is not on the witness stand testifying. Because Plaintiffs have no objection and agree, the motion is **GRANTED** as stated herein.

### H. Motion No. 16 – Objecting to CACI 430 and Proposing Alternative Special Jury Instruction

Defendant Naranjo moves in limine to propose a special jury instruction as an alternative to CACI 430 (defining "substantial factor"). Specifically, Defendant Naranjo contends CACI 430 does not reflect the appropriate standard for causation for Plaintiffs' California medical malpractice and wrongful death claims, and thus, the Court should instead give his proposed special jury instruction. Plaintiffs object, arguing the California Court of Appeal has already rejected Defendant Naranjo's very argument. On January 6, 2019, the parties submitted their proposed jury instructions to the Court, including designating CACI 430 as an *agreed upon* instruction. Because Defendant Naranjo appears to have abandoned his argument about giving the proposed special jury instruction instead of CACI 430, the motion is **DENIED as moot**.

## V. CONCLUSION

In summary, the Court rules as follows:

1. Plaintiffs' motion in limine number 1 is DENIED.
2. Plaintiffs' motion in limine numbers 2 and 3 are GRANTED.
3. Plaintiffs' motion in limine numbers 4, 5, and 6 are GRANTED IN PART AND DENIED IN PART.
4. Defendant CPMG and Naranjo's motion in limine numbers 1, 3, 7, and 8 are DENIED.
5. Defendant CPMG and Naranjo's motion in limine numbers 2, 4, 5, and 6 are GRANTED.
6. Defendant Naranjo's motion in limine numbers 9, 10, 11, and 16 are DENIED.
7. Defendant Naranjo's motion in limine numbers 12, 13, 14, and 15 are GRANTED.
8. Defendant Sara Hansen's motion in limine numbers 1-13 are DENIED AS MOOT.

**IT IS SO ORDERED.**

DATED: May 23, 2019

HON. ROGER T. BENITEZ
United States District Judge

12

3:16-cv-01412-BEN-MDD